## COLLINGS et ux. v. INDUSTRIAL SAVINGS SOCIETY.

No. 12351—Opinion Filed Nov. 27, 1923.

Rehearing Denied Jan. 15, 1924.

1. **Building and Loan Associations—Nature of Contracts—Usury.**

Where a party is a stockholder in a building and loan association, and afterwards becomes a borrower from the said association, the two transactions have no connection with each other, and cannot be commingled to support an action in usury.

2. **Same—Loans—Method of Bidding.**

A borrower from a building and loan association may bid at a meeting of the directors by an agent or submit his bid in writing without being present himself.

3. **Same—Payments as Usury.**

The contract by which a party becomes the owner of shares of stock of a building and loan association to be paid for in monthly installments, running through a long series of years and borrows from the asso-

ciation on his stock, the interest on the loan being the legal rate, is not to be treated as a usurious loan; the payments supposed to constitute the usury by the terms of the contract being made on the stock debt, not the loan.

**4. Appeal and Error—Change of Theory of Case—Defenses.**

Where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal, so as to present another defense, not presented nor relied upon in the trial court.

**5. Estoppel—Acting Upon Representations.**

Where a person willfully makes a representation intended to induce another to act on the faith of it, or where, whatever is intended, a reasonable man in the situation of that other would believe that it was meant that he should act upon it, and in either case that other does act upon its truth and alters his position, there is an estoppel in pais to conclude the former from averring against the latter a different set of things as existing at the same time.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by Industrial Savings Society against Estella Collings and George E. Collings on note and mortgage. Judgment for plaintiff. Defendants bring error. Affirmed.

W. M. Wallace, for plaintiffs in error.

Harry L. Fogg and John C. Snyder, for defendant in error.

Opinion by PINKHAM, C. The Industrial Savings Society, a corporation of the state of Michigan, hereinafter referred to as plaintiff, commenced this action against Estella Collings and George E. Collings; the El Reno State Bank, and El Reno Mill & Elevator Company, and Eller K. Holt were made parties defendant on allegations that they claimed some interest in the property involved. They were eliminated at a former trial, and the controversy here is between the plaintiff and the defendants Estella Collings and George E. Collings.

The petition alleges that on the 27th day of May, 1911, Estella Collings purchased from the plaintiff, and became the owner of 20 shares of class D stock, with a maturity value of $50 per share, and thereby became a stockholder in, and a member of, said plaintiff society, subject to its rules and entitled to all its privileges and benefits. That in consideration of said sale the defendant promised to pay the plaintiff thereafter the sum of $7 per month, for a period of 94 months; that on the first day of June, 1911, said defendants borrowed from the plaintiff the sum of $1,000, and executed and delivered to the plaintiff their bond in the sum of $2,000, conditioned that if the said Estella Collings would comply with the by-laws of the association and pay to the plaintiff at Detroit, Mich., 76½c per share per month on said 20 shares until the said shares shall have reached their maturity value of $50 per share, or until the defendant had made 94 payments, and also pay all fines legally assessed against her, then said obligation to be void, otherwise to have full force and effect.

The monthly payments of 76½c per share, or $15.30 on the 20 shares of stock consisted as follows: 35c per share on purchase price of stock__$7.00____interest at 6 per cent. on $1,000 loan_____$5.00; 16½c per share premium bid to secure loan___3.30.

That the defendants executed and delivered to the plaintiff a real estate mortgage dated June 1, 1911, mortgaging certain lots in El Reno, subject to the condition of defeasance upon payment of said monthly payments of $15.30, for a period of not to exceed 94 months or until said stock reached the value of $50 per share. That defendants failed to pay the monthly installment of $15.30 due July 1, 1915, and each and every installment thereafter down to and including the installment due at the time of filing of the petition. That there were 11 installments due as of June 30, 1916. That defendant made 50 monthly payments in accordance with her agreement; that of said payments the sum of $7 per month applied to her stock, or a total of $350. That the earnings apportioned to her stock amounted to $131.70, making a total credit of $481.70, which amount was credited upon defendant's loan. That the total amount due on July 1, 1916, was $651.48.

Defendants pleaded that the contract was usurious and alleged that they made application to plaintiff for a loan of $1,000, through one Van Ness, agent of plaintiff at El Reno: that plaintiff agreed to make said loan in accordance with its by-laws, to wit: Purchase of 20 shares of stock, par value $50 per share: 35c per share per month for 94 months: $5 per month interest on loan, and $3.30 per month premium; a membership fee of 50c per share amounting to $10; fee for examining abstract of $5; and allege, further, a fee of $50 to the agent, Van Ness, as commission.

Defendants pleaded the application for the loan and attached to the petition a copy of

said application, and also the by-laws of the plaintiff.

. Defendant Estella Collins further alleged that the contract was complete by defendant assigning her 20 shares of stock to plaintiff as collateral security, and that on payment of defendant to plaintiff of the sum .of 76c per share per month for 94 months and the full maturity of the stock, the same was to be cancelled and surrendered.

Defendants further allege that neither of them made bid or offer for premium before or after application for said loan, and the amount of premium and payments on said contract was made at the time contract was made. That contract was made and accepted by plaintiff with full knowledge of said conditions and with intent to exact a rate of interest in excess of the rate allowed by law.

The answer further states that plaintiff delivered to Van Ness draft for $985, to be delivered to defendants as proceeds of the $1,000 loan; that said agent paid a recording fee of $2.50 out of same, and also retained a commission of $50, and delivered to them the sum of $932.75; that defendants had paid the sum of $350 on stock, and were entitled to credit of an earning of $131.70.

The answer further asks to have set off against balance due plaintiff double the amount of alleged interest of $8.32 per month, for a period of 44 months, the balance of the contract period.

Defendant's cross-petition recounts the allegations contained in the answer, alleges that contract was usurious, and asks for double the amount of interest paid, and an attorney's fee of $250.

The cross-bill further avers that the mortgage contained a clause stipulating that it was agreed that if default was made in payment of taxes and assessments, the mortgagee could pay same and add amount to that secured by mortgage. That taxes for years 1913, 1914, 1915, 1916, and 1917 became due and unpaid, and that plaintiff paid same, and is now holder and owner of tax certificates, and demands that plaintiff bring same into court or be forever barred.

To the answer and cross-petition of the defendants, plaintiff filed a general denial. Trial was had before a jury and resulted in a verdict for the plaintiff for the amount sued for and interest.

Defendants filed motion for new trial, which was overruled, and the case is brought to this court on case-made and petition in error.

A number of assignments of error are set out in the petition in error and in defendants' brief. The propositions discussed are: First, Is the plaintiff a building and loan association, and is the contract a building and loan contract, or merely a contract for the loan of money under the laws of Oklahoma? second, if the relationship existing between plaintiff and defendants under the contract is that of lender and borrower, then that the contract is usurious on its face; third, that the court erred in refusing the motion of the defendants for an instructed verdict; that the court erred in refusing to give to the jury defendants' requested instructions numbered one to nine, inclusive; and that the court erred in giving to the jury instructions numbered one to five, inclusive.

Defendants contend, under the first proposition, that plaintiff is not a building and loan association for the reasons: First, that the capital stock of plaintiff is in excess of the amount permitted by law and that the period of time for which the plaintiff's charter was granted was in excess of the time permitted by the laws of this state; second, that premiums were not fixed by competitive bids at an open meeting held for that purpose but were fixed in advance by agreement; third, that the stockholders were not confined to classes of persons mentioned in the laws of the state in force at that time; fourth, that the contract between plaintiff and defendant is not a building and loan contract, but the relationship is that of lender and borrower.

Defendants' brief contains a number of sections of the by-laws of the plaintiff for the purpose of showing that the same are in conflict with the laws of Oklahoma in force at the date of the contract. The by-laws provided, among other things, that "the object of this society shall be to afford to its members a safe and desirable investment for their savings, the building and improving of homesteads, and the loaning of money to its members only." that "the corporate existence of the society shall continue for a period of 30 years." "That the capital stock shall be $1,000,000 divided into 20,000 shares of the par value of $50 each."

The case of Aetna Building & Loan Association v. Holt, 78 Okla. 307, 190 Pac. 872, is cited in support of the first contention. That case fails to show affirmatively that an excess capitalization changed the status of the foreign corporation from that of a. building and loan association. The opinion rendered in that case was to the effect that a foreign corporation incorporated as a building and loan association could not en-

joy any greater rights and privileges than a domestic association.

The question decided was that the association under consideration had dispensed with competitive bidding and the offering of premiums in violation of statutes that gave it a greater advantage than was enjoyed by domestic corporations.

"The fact that a foreign association has a larger capitalization than is permitted domestic associations does not make it against public policy to admit such foreign associations to do business within the state." (9 C. J. 998.)

In the case of McMurray et al. v. Sidwell (Ind.) 58 N. E. 723, it is said in the opinion:

"There is no merit in appellee's suggestion that it was against public policy to admit this association because the Illinois statutes authorize a larger capitalization than did the Indiana statutes. It is the nature and not the size of a business that determines its legality."

In Midland Saving & Loan Company v. Deaton et al., 57 Okla. 622, 157 Pac. 285, cited by defendant, this question was raised by the defendants in that case. In the opinion the court says:

"The only question it seems to us involved in the determination of this case, is whether or not the court erred in holding that the plaintiff having failed to comply with the laws of Oklahoma relative to building and loan associations, in not submitting the loan to be bid for in open meeting, does not come within the protection of the laws relating to building and loan associations, and that the relation of shareholder and corporation does not exist between defendants and plaintiff, and that their only relation is that of borrower and lender. The court having found that this transaction was not tainted with usury for the reason that the contract was not entered into corruptly with intent to violate and evade the usury laws, which finding and conclusion of law, we think, is supported by the facts, we need not consider that question."

Furthermore, it is apparent from an examination of the record that while the by-laws pleaded in the amended answer of defendants show that the plaintiff was chartered for 30 years and had a capital stock of $1,000,000, this question was not raised as an issue in the trial court. The defense relied upon there was based upon the theory of usury, and, too, a questioning of the manner and form of competitive bidding and offering of premiums.

It does not appear in this record how much of the actual charter life remained of the plaintiff's 30 years of incorporation at the time the plaintiff corporation was admitted to do business in this state, or the amount of money assigned for use in this state, and whether or not the amount of money so assigned was or was not in excess of the capitalization allowed. In other words, the right of the plaintiff to do business in this state is raised for the first time in this court by the defendants.

It is well settled by the decisions of this court that where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal so as to present another defense not presented or relied upon in the trial court. Duffy v. Scientific A. C. C., 30 Okla. 742, 120 Pac. 1088.

The next contention made by defendants under the first proposition is that premiums were not fixed by competitive bids at an open meeting for that purpose, but fixed in advance by agreement. Section 1490, Compiled Laws 1909 (1297, Rev. Laws 1910), which was in force at the time of the application, reads as follows:

"The said officers shall hold stated meetings at which the money in the treasury, if equal to the amount of one share of stock in such corporation shall be offered for loan in open meeting and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of the full amount for each share of stock held by such stockholder; provided, that good and ample security shall be given by the borrower to secure the repayment of the loan. In case the borrower shall neglect to offer security that is approved by the board of directors by such time as the by-laws may prescribe, he or she shall be charged with one months interest at the rate charged by the association on loans, and a fine not to exceed one dollar per share, together with any expenses incurred, and the money shall be resold at the next stated meeting. In case of non-payment of installments, or interest or premium by borrowing stockholder, for the space of six months, payment of principal and interest, without deducting the premium paid or interest thereon, may be enforced by proceeding on their securities according to law."

This statute does not require a bidding member to be present in person or forbid such member from authorizing another person as agent to attend the meeting and bid a premium in the name of and for such member.

The record discloses that the defendant Estella Collings made personal application to one Van Ness, agent of the plaintiff at El Reno, for a loan from the plaintiff society of Detroit, Mich., in the amount of $1,000. This application was in writing, acknowledg-

ed by both defendants. The application stated in substance that the defendants Estella Collings and G. E. Collings had made, constituted, and appointed one Austin N. Kimmis of Detroit, Mich., their lawful attorney for them in their name at the next meeting of the plaintiff society held after the application shall reach the office of said society at Detroit, Mich., to bid for them a premium for a loan from the said society, 16½ per share, per month, on each of 20 shares of class D stock of said society, for the period of 94 months, said 16½ per share, per month, to be paid in addition to all charges for interest and installments on said stock between the first and fifth days of each month, during said period of 94 months, according to the by-laws of said society.

The record further discloses that the amount of the premium which the defendant authorized her agent to bid for her was written in the application in ink in the space provided for applicant to state in writing the amount of her bid, and was not printed thereon.

It further appears that the name of said Austin N. Kimmis was not printed in the application, but written in ink in the space provided for in said application.

Midland Saving & Loan Company v. Deaton et al., 57 Okla. 622, 157 Pac. 285; Midland Saving & Loan Company v. Nicholl, 76 Okla. 27, 183 Pac. 731; Holt v. Aetna Building & Loan Ass'n, 78 Okla. 307, 190 Pac. 870; and Union Savings Ass'n v. Cummings, 78 Okla. 265, 185 Pac. 869, are cited by defendant in supporting her contention that premiums were not fixed by competitive bids at an open meeting, but were fixed in advance by agreement.

In the above cases this court expressly found that the amount of premium was arbitrarily fixed in the by-laws of the association, and in the contract and that the same was printed as part of the printed application form and that the same was in contravention of the Oklahoma statutes.

In the Holt v. Aetna Bldg. & Loan Ass'n Case, supra, the court found the by-laws of the association provided for the making of loans without premiums, and without bids in violation of the statutes, and for these reasons it was held that it was not a building and loan association.

These cases do not go to the extent of holding that written bids and the bidding through an agent duly appointed in writing, in the absence of fraud, are illegal and sufficient to set aside a contract such as is involved in this case.

A number of other states with statutes similar to ours have held written bids to be in compliance with their statutes. Farmers Saving & Building Ass'n v. Kent (Ala.) 20 South. 874; Hughes v. Farmers Saving & Bldg. Ass'n. (Tenn.) 463 S. W. 362; Savage et al. v. Evanston Saving & Loan Ass'n (Ill.) 81 N. E. 1062.

"Statutes providing for competitive bidding are construed to authorize the making of bids through an agent by specifically authorizing him to bid." 9 C. J. 968.

"But a borrower from a building and loan association may bid at a meeting of the directors by an agent, or submit his bid in writing without being present himself." State v. Stockton, 85 Mo. App. 477.

It is further contended that the stockholders were not confined to the class of persons mentioned in the laws of this state in force at the time of the contract, and that the court had before it practically the same kind of contract and identical by-laws in the case of Holt v. Aetna Bldg. & Loan Ass'n, supra. In that case it is said in the opinion:

"There was a want of mutuality between the borrowing stockholder and the others in that the borrowing members, installment stockholders, were not entitled to any profits until after all interest, due and payable on prepaid, deposit and dividend shares, taxes on the assessed stock of the association, and losses, if any, were paid, whereas other stockholders were entitled to interest on their stock out of its earnings without deduction for taxes and losses."

It is sufficient to say that the by-laws in the instant case are not of the character described in the case cited. The principles of mutuality and cooperation are recognized according to the provision of the by-laws, in this case, each stockholder, regardless of the class, and whether a borrower or non-borrower share alike in the earnings of the association and bear an equal burden in the losses sustained, according to the amount of their stock.

"The fact that there are different classes of stock, with different rights, and liabilities, does not destroy the company's character as a building and loan association." Rooney v. Southern B. & L. Ass'n. (Ga.) 47 S. E. 345.

The record discloses that the defendant Estella Collings was a stockholder in the plaintiff association; that she purchased and was the owner of 20 shares of stock and that she participated in the profits to the extent of $131.70; that she was also a borrower from the association.

"Considered from the standpoint of borrower, it is held in most jurisdictions that

the making of a loan does not terminate his relation of member and stockholder, even though he pledges his shares of stock as security for the loan; in other words he occupies the dual relationship of borrower and stockholder, each of which is distinct from the other." 9 C. J. 956.

We conclude, after a careful examination of the record, that the relationship existing between the parties to this action is that of corporation and borrowing stockholder; and, further, that the contention of defendant that the loan is usurious cannot be upheld.

Defendant raises the question that she did not receive the full $1,000, and therefore could not be charged with that amount, or with interest on that sum. The undisputed evidence shows that the draft forwarded by the plaintiff and indorsed by defendant was for the sum of $985. There was no dispute as to the fact that the $15 was used in the necessary expenses of making the loan. Defendant, in computing the interest in order to show the same was usurious, deducted this sum from the amount of the loan.

"But the payment by the borrower of the necessary expenses of the lender incurred in making the loan in addition to the legal interest, has not been deemed to make the contract usurious." 4 R. C. L. 373. Iowa Savings & Loan Ass'n. v. Heidt (Iowa) 77 N. W. 1050.

The great weight of authority sustains the proposition that contracts of building and loan associations with their members for a loan at a legal rate of interest are not rendered usurious by the circumstances that the premiums, dues, and fines exacted bring the total amount paid by the borrower to an amount exceeding the lawful interest on the loan, even though there is no specific statutory exemption of such contract from the general laws against usury. 27 R. C. L. 210.

Defendants also deduct the sum of $50 for commission alleged to have been paid one Van Ness in order to create usury.

In Aetna Bldg. & Loan Ass'n v. Hahn, 82 Okla. 110, 108 Pac. 221, it is distinctly held that premiums could be charged in building and loan contracts and that the same were part of the stock transaction.

Defendants admit that the plaintiff forwarded to Van Ness $985, to be delivered to defendants as proceeds of the $1,000 loan. Their argument is that from this amount they paid the local agent of plaintiff a commission of $50 and a recording fee of $2.45, and therefore they actually received but the sum of $932.75, for the use of which they paid $5 per month interest, and $3.30 premium, which they claim is usurious. As to

this item of $50 paid to the said Van Ness as commission, the record discloses that the defendant Estella Collings and her husband, George E. Collings, testified that they informed the plaintiff in writing on June 5, 1911, before the draft for $985 was received, that they had not paid or agreed to pay either directly or indirectly to any agent or agents of plaintiff, or to any person or persons, who could by any manner or devise be considered the agent or agents of the plaintiff, or to any person representing himself to be the agent of plaintiff, any commission, bonus, money, or other valuable consideration, or any consideration of any kind, for the procuring of said loan, or on account of stock pledged as security therefor, except a membership fee of not to exceed one per cent. on the amount of said loan, a fee not to exceed $5 for the examination of the title to the property offered as security, and the fee for recording the mortgage.

The record also discloses that the draft of $985 was sent to defendants after receipt of this statement, and further that the draft would not have been sent to plaintiff if it had known that defendants claimed to have paid the $50 commission.

The universal rule is stated in 16 Cyc. 749, as follows:

"Where a person willfully makes a representation intended to induce another to act on the faith of it, or where, whatever his intention, a reasonable man in the situation of that other would believe that it was meant that he should act upon it, and in either case that other does act upon its truth and alters his position, there is an estoppel in pais to conclude the former from averring against the latter a different set of things as existing at the same time."

The evidence is undisputed that the plaintiff association had itself paid to Van Ness $10 for his commission in making the loan, and that plaintiff knew nothing of the claim for commission which the defendant testified that she paid Van Ness until a copy of the pleadings was received, and that the loan would not have been made had the statement not been received. Consequently, defendants after executing the signed statement that they had not paid any agent of plaintiff any commission, said statement stating that the purpose of it was to assure plaintiff that all acts were in strict accordance with the laws of this state, and plaintiff having acted upon the truthfulness of said statement and paid to defendants the amount of said loan, the defendants will not now be permitted to assert that the statement is untrue.

Upon a review of the entire record we are convinced that the contract was not entered

into on the part of the plaintiff with an intention to violate or evade the usury laws, and there is no evidence in this record from which an inference can be drawn that any act of plaintiff was intended to evade the usury laws.

Defendants complain that the court erred in rejecting evidence to prove the allegations of the cross-petition on taxes paid by plaintiff and its successors and assignees. The county treasurer testified that tax certificates for 1913 and 1914 were issued to the plaintiff society, but the court sustained an objection to any further evidence along that line. The record fails to disclose any exception taken by the defendants. We think the court did not err in its ruling.

We do not think the question of tax certificates was properly raised in the trial of this cause.

We have examined carefully the instructions given by the court and the instructions offered by the defendants, and we are of the opinion that the instructions offered were properly refused and those given fairly stated the law applicable to the case. The cause was submitted to the jury on the facts, and there appears to be ample evidence to support their verdict.

For the reasons stated, we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.