## COLLINGS v. EL RENO BLDG. & LOAN ASS'N.

No. 25333. Nov. 19, 1935.

Rehearing Denied Dec. 10, 1935.

W. M. Wallace, for plaintiff in error.

Fogg & Fogg, for defendant in error.

PER CURIAM. This action was commenced in the district court of Canadian county, Okla., by the El Reno Building & Loan Association, defendant in error, against Estella Collings, plaintiff in error, and T. J. Stewart Lumber Company for recovery on a promissory note and for the foreclosure of a real estate mortgage given to secure the same. T. J. Stewart Lumber Company filed a disclaimer, hence is not a party to the appeal.

The parties will be referred to herein as plaintiff and defendant in the order in which they appeared in the lower court.

The petition alleged that plaintiff is a building and loan association organized and existing under and by virtue of the laws of the state of Oklahoma regulating the organization and operation of domestic building and loan associations; that defendant subscribed for 25 shares of class "F" installment stock in the association and agreed to pay therefor at the rate of $12.50 monthly; that she applied for and procured a loan from the association in the amount of $2,500, evidenced by her promissory note in said amount and secured by a real estate mortgage on property situated in the city of El Reno, Okla., and further secured by a pledge of the said 25 shares of stock. By the terms of the note and mortgage pleaded, and copies of which were attached to the petition, defendant agreed to pay interest on the loan in the amount of $17.50 per month until such time as the stock matured by reason of payments thereon and the accretion of dividends, in accordance with the by-laws of the association, at which time the mortgage indebtedness should be discharged by cancellation of the stock. The note provides for acceleration in case of default, and that after crediting the book value of the stock thereon, the balance should bear interest at the rate of eight (8) per cent. per annum. Plaintiff alleged default in payment of dues, interest, taxes, and insurance, and that after allowing all credits there was due $2,375.65 principal, $52.50 interest, $494.88 for insurance and taxes advanced under the terms of the mortgage, or a total sum of $2,923.03, for which sum plaintiff prayed judgment and prayed for a foreclosure of its mortgage.

By defendant's second amended answer, on which the case was tried, defendant admitted the execution and delivery of the note and mortgage and admitted the issuance of the certificate for 25 shares of stock to plaintiff and her assignment thereof to defendant as additional security for the loan. Defendant alleged that she paid 31 payments of $17.50 and one payment of $8, totaling $542.50, and an additional sum of $112.50 "on the loan." As a counterclaim, but without alleging any additional facts as to the nature of the contracts between the parties, defendant alleged that the loan contract was usurious, and by several pages of calculations attached as an exhibit to the second amended answer in support of her claim, defendant alleged that the loan contract was usurious, that if fully performed according to its terms, she would have paid interest in the amount of $3,500, whereupon she prays judgment against the plaintiff in double the amount thereof, or for the sum of $7,000.

Defendant filed a motion for judgment on the pleadings as against the plaintiff, which motion was overruled, and plaintiff thereafter filed a reply in the nature of a general denial as to new matter contained in defendant's second amended answer and cross-petition. Upon these pleadings the cause proceeded to trial before a jury.

Plaintiff introduced in evidence its note and mortgage and the certificate of stock above referred to, also the by-laws of the association. The secretary of the association testified that defendant paid 31 interest payments of $17.50 each and one interest payment of $8, making the total interest paid $550, and that she made nine of the monthly payments of $12.50 each on the stock, or a total payment thereon of $112.50; that after allowing all credits there was due upon the loan as principal, interest, and for taxes and insurance paid, the sum of $2,913.74 on the date of filing the petition. Defendant testified to having obtained the loan and that her payment was $30 per month. Defendant offered no testimony contradicting that offered by plaintiff, and when asked by the court whether defendant claimed to have made any payments other than those credited, defendant's attorney answered, "We agreed." No further testimony being offered, at the conclusion thereof plaintiff moved for a directed verdict, which motion was sustained, and the court directed the jury to return a verdict for the plaintiff in the amount of $2,913.74. Judgment was rendered in favor of plaintiff in said amount and for the foreclosure of its mortgage. After defendant's motion for a new trial was overruled, appeal was duly lodged in this court by the defendant.

Plaintiff's petition clearly stated a cause of action, and its reply put at issue any new matter pleaded by defendant in her answer and cross-petition. Defendant's motion for judgment on the pleadings was, therefore, properly overruled.

Plaintiff proved the execution of the note and mortgage, the amount of installments paid on the stock, the amount of interest paid on the loan and the amount of insurance and taxes which it paid in accordance with the terms of the mortgage, and proved default on the part of the defendant. The evidence presented no controversy as to the amounts agreed to be paid or as to the credits to which defendant was entitled. There was, in fact, no conflict in the evidence and no issue of fact which the trial court could properly submit to the jury. It was defendant's contention that the contracts as executed required her to pay a usurious rate of interest. Whether defendant's contention should be sustained, therefore, depended upon a construction of the written instruments comprising the contracts between the parties, to wit, note, mortgage, by-laws, and stock subscription. There was not introduced in evidence any written application for the purchase of the stock, but the by-laws, which are by reference made a part of the note and mortgage, provide the manner and terms of payment for the class of stock issued and for the declaration and application of dividends thereon. The entire transaction, which defendant claimed to be usurious in its inception, was before the court in the form of these written instruments.

In affirming the judgment of the trial court in directing a verdict for the defendant in the case of Hickman v. Oklahoma Savings & Loan Association, 169 Okla. 224, 36 P. (2d) 928, which action was brought for the recovery of alleged usurious interest, and involved the construction of the same character of contracts involved in this case, the rule applicable was stated as follows:

"Both contracts entered into by the plaintiff definitely set out in detail the requirements to be performed by both parties. They were understandable and couched in everyday language. These contracts must be construed by the court in their common, ordinary language and enforced as such. This is not a question for a jury to determine."

In view of the above, we find no error on the part of the trial court in withdrawing the case from the consideration of the jury.

The next question presented is whether the transactions between the parties amounted to an agreement to pay a usurious rate of interest. There was issued to defendant a certificate for 25 shares of class "F" installment stock, for which she agreed to pay at the rate of $12.50 per month until such payments or dues together with dividends earned should mature the stock at its face value of $100 per share. Defendant also borrowed $2,500 from plaintiff, on which she was required to pay interest at the rate of $17.50 per month until the installments paid on her stock together with accumulated dividends thereon should equal $2,500, at which time the stock should be surrendered and canceled in full payment of her loan evidenced and secured by the note and mortgage. By her acquisition of the shares of

stock she became a stockholder in the association and a participant in its earnings. The time required to mature the stock was dependent upon the amount of earnings of the association. By the specific terms of the note and mortgage and by-laws, the monthly payments of $12.50 were to be applied upon the purchase of the stock and not as credits on the note. The note provided for payment of interest in the amount of $17.50 monthly on the loan of $2,500, and further provided that after default and exercise of the mortgagee's option to declare the entire loan due and payable, and after crediting the book value of the stock thereon, the balance should thereafter bear interest at the rate of 8 per cent. per annum. The rate of interest provided for in the note either before or after default and acceleration was clearly a legal rate of interest. Defendant sought to apply the $12.50 monthly stock payments and the $17.50 monthly interest payments, or a total of $30 monthly, to the payment of interest and monthly principal reductions upon the loan, ignoring the agreement to purchase the stock and without taking into consideration the accumulation of dividends and application of the same toward the purchase price of the stock. By such a process defendant concludes that a simple mathematical calculation shows the transaction to be usurious on its face. Had this identical question not been heretofore presented to this court, we might be inclined to analyze more fully defendant's theory of the case; however, the identical questions have been heretofore presented to this court and determined adversely to defendant's claim.

In the case of McGuire v. Oklahoma City Building & Loan Association, 112 Okla. 158, 241 P. 804, where the defendant pleaded usury in a foreclosure action by the Building & Loan Association, the decision of this court was summarized as follows:

"Upon the authority of the decision of this court in the case of Aetna Building & Loan Association v. Hahn, 82 Okla. 110, 198 P. 331, we conclude that the amounts charged for interest and on stock are two separate and distinct contracts, and where the interest charged is not beyond the legal rate, it will not be treated as a usurious loan, and the more recent case of Collings et al. v. Industrial Savings Society, 94 Okla. 271, 221 P. 1036, is to the same effect."

More recently followed the same rule in the case of Hickman v. Oklahoma Savings & Loan Association, 169 Okla. 224, 36 P. (2d) 928. In that case plaintiff sued the Building & Loan Association for the recovery of usurious interest alleged to have been paid. Plaintiff in that case, just as plaintiff in the instant case, sought to commingle the contract for purchase of stock with the loan contract and to credit the total sums paid on both contracts upon the loan contract so as to support a charge of usury. We quote from the opinion in the Hickman Case as follows:

"It has been repeatedly held in this state that a contract by which a party becomes the owner of shares of stock in a building and loan association and a contract by which such person borrows from the association are not to be treated as one contract so as to sustain a usurious rate of interest."

The contracts involved in the cases above cited were identical in every material respect with the contracts involved in this case. This court has uniformly construed such contracts as separate agreements. To the same effect are: Aetna Building & Loan Association v. Hahn, 82 Okla. 110, 198 P. 331; Collings v. Industrial Savings Society, 94 Okla. 271, 221 P. 1036; McGuire v. Oklahoma City Building & Loan Association, 112 Okla. 158, 241 P. 800; Lindsay v. Chickasha Building & Loan Association, 39 Okla. 12, 130 P. 570.

In defendant's brief it is urged that evidence did not show that a bid for the loan was made and accepted, and that the contract did not constitute a mutual building and loan contract. Defendant offered no evidence and made no contention in the trial court to the effect that the application for the loan was not duly made and accepted, as provided by law and in accordance with the by-laws of the association. Furthermore, it is apparent from the terms of the note and mortgage and from the by-laws of the plaintiff association, which were introduced in evidence, that defendant was entitled to share in the earnings of the association and to receive credit upon her stock for dividends declared in favor of all the holders of similar stock. That the issuance of different classes of stock by a building and loan association does not destroy the mutuality of the plan, was determined by this court in the case of McGuire v. Oklahoma City Building & Loan Association, supra.

Finding no error in the rulings and judgment of the trial court, we are of the opinion the same is correct, and the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Stanley D. Campbell, Edward

H. Chandler, and Harry Campbell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stanley D. Campbell and approved by Mr. Chandler and Mr. Harry Campbell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.