METHVIN et al. v. AMERICAN SAVINGS & LOAN ASS'N et al.

No. 30441. April 11, 1944.

Rehearing Denied June 13, 1944.

Application for Leave to File Second Petition for Rehearing Denied Sept. 12, 1944.

*151 P. 2d 370.*

W. R. Wheeler, of Anadarko, and Roscoe Bell, of Oklahoma City, for plaintiffs in error.

Pruett & Wamsley, of Anadarko, and

John H. Halley, Clay M. Roper, and Herman Merson, all of Oklahoma City, for defendants in error.

PER CURIAM. This is an appeal from a judgment of the district court of Caddo county, wherein the American Savings & Loan Association of Anadarko, Okla., brought a foreclosure proceeding, naming Frank K. White, Frank B. Methvin and Rebecca Methvin, B. E. Morris, and many others, as defendants. Many of the defendants having made default, and Frank K. White, hereinafter referred to as White, having died before the trial of the cause, judgment was rendered for the plaintiff only against Frank B. Methvin, and Rebecca Methvin, hereinafter referred to as Frank Methvin and Rebecca Methvin, who have brought this appeal.

The pleadings show that the plaintiff's action was based upon two promissory notes, one dated May 2, 1925, in the sum of $3,800, the other dated July 26, 1929, in the sum of $4,000, both notes signed by White and Frank and Rebecca Methvin, and secured as of date by a mortgage on lot 7 in block 49 in the original townsite of Anadarko, Caddo county.

Plaintiff's petition alleged that White and Frank and Rebecca Methvin were, at the time of the execution of the respective notes, stockholders in and members of said building and loan association, having 50 shares of stock therein, and alleging default in payment, asked for judgment and foreclosure.

The defendants Frank and Rebecca Methvin filed their answers and cross-petition at length, consisting of general denial, denying obligation for amount sued for; denying the plaintiff's existence as a building and loan association; denying that defendants were stockholders or investors in the plaintiff organization; alleging a charge of usurious interest; denying the signing of the $3,800 note and mortgage by Frank Methvin; denying plaintiff's right to sue and foreclose as a building and loan association, and containing other allegations which will be considered herein.

The defendants further complain of the judgment entered against them and their property in favor of defendant B. E. Morris, hereinafter referred to as Morris, on her cross-petition, which will be discussed separately hereinafter.

The defendants attack the legality of the plaintiff's organization as being a building and loan association, and deny that it is authorized to do business in the State of Oklahoma.

18 O. S. 1941 § 4 provides:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such de facto corporation may be a party; but such inquiry may be had, and action brought, at the suit of the state, in the manner prescribed in the Code of Civil Procedure."

In Industrial Bldg. & Loan Ass'n v. Williams, 131 Okla. 167, 268 P. 228, this court held:

"The legal existence of a corporate entity may not be inquired into by those with whom it has, in the name and capacity of such entity, contracted."

To the same effect is the holding in Farmers Union Co-Operative Royalty Co. v. Southward, 183 Okla. 402, 82 P. 2d 819.

The articles of incorporation of the plaintiff company and its certificate of authority are fully shown as a part of the record in this case, and this court must conclude that the contention here presented is without merit.

The defendant Frank Methvin contends that he did not sign the note and mortgage in the sum of $3,800. It is contended that this note and mortgage were signed by White and Rebecca Methvin and not signed by Frank Methvin, who, as alleged, at the time owned and occupied the real estate involved as his homestead, and that said mortgage constitutes no lien upon the interest of Frank Methvin.

In the second amended answer to the

petition of plaintiff filed by defendants Frank and Rebecca Methvin, it is alleged that on May 2, 1925, they borrowed from plaintiff the sum of $3,800 and executed their note and mortgage evidencing same and covering the real estate named in plaintiff's petition. Defendant Frank Methvin further ratified the note and mortgage when he and White made an application for a second loan from plaintiff, resulting in a loan of $4,000 herein sued upon. It was further acknowledged when the Methvins and White assigned the rents arising from the building in controversy to the plaintiff, shown by the record. Frank Methvin admitted in his testimony that he had ratified the $3,800 loan and said he was not questioning same on the theory that he did not sign same.

It is further contended that the plaintiff association did not pay out and disburse the full $3,800 evidenced by the first note, and the same contention is made as to the $4,000 note and mortgage given to plaintiff. These two disbursement accounts, together with vouchers and exhibits showing copy of original ledger sheets in connection with the testimony of J. O. English, the secretary and treasurer of the plaintiff association, are shown at great length in the record. After these several years the plaintiff was enabled to produce the original checks and other necessary vouchers to show the distribution in the two accounts, and which, when taken in connection with the testimony of J. O. English, are sufficient to show disbursement was made therein.

It is further contended that, since the loans upon which plaintiff asks judgment and foreclosure were not made upon competitive bid, the plaintiff has no authority to foreclose its mortgage. To sustain that contention they cite Aetna Bldg. & Loan Ass'n v. Rouch, 32 Okla. 735, 124 P. 24, wherein is cited section 1490, Comp. Laws 1909, showing requirement of building and loan companies to fix premiums for loans of money by competitive bidding.

This section of the law was repealed by chapter 200, Session Laws 1913, p. 449.

In Union Savings Ass'n v. Cummins, 78 Okla. 265, 190 P. 869, this court held:

"Prior to the enactment of chapter 200, Session Laws 1913, p. 445, the laws of this state required building and loan associations to fix premiums for the loan of money by competitive bidding."

We must conclude that this contention is without merit.

It is further contended that upon dismissing the suit against White, the lawsuit should have proceeded no further except upon the cross-petition against the plaintiff and the issues as to the answer and cross-petition of Morris. This contention is based upon the fact that no revivor was had after the death of White. The record shows that White had executed a deed to his half interest in the property involved to Rebecca Methvin, and that the 50 shares of stock of the plaintiff association had been assigned to the plaintiff by White and the Methvins as security for the advancement of $3,800 made on stock by the plaintiff. Furthermore, by stipulation and agreement shown by the record, no personal judgment was to be taken against White. There was no necessity for revivorship and no necessity to delay the court proceedings for such. White was shown to be a single man and had been duly served as defendant prior to his death. Freeman v. First Nat. Bank of Boynton, 44 Okla. 146, 143 P. 1165; Page v. Turk, 43 Okla. 667, 143 P. 1047; Boatmen's Bank v. First Nat. Bank of Herington, 70 Kan. 624, 79 P. 125. The plaintiff having given the defendants, on their mortgages, full credit for all dues paid on the two installments of stock certificates and dividends earned thereon, a revivorship against the estate of White could in no way benefit the defendants or affect their rights, and they cannot be heard to complain.

The defendants further complain that the 50 shares of stock which were sold and delivered to defendants White and

the Methvins were sold at 50 cents a share instead of 60 cents, as required by plaintiff's by-laws. The record shows that, by permission of the parties to the action, the case-made was amended so as to show the resolution of the board of directors of the plaintiff association authorizing the reduction from 60 cents to 50 cents per share was adopted April 13, 1925, and it is shown that the $3,800 loan and the 50 shares of stock were issued May 2, 1925. It is not shown that such change was to the disadvantage of defendants and they cannot complain.

It is contended that certain rents collected from C. R. Anthony on the property here involved was applied on another loan of White and the Methvins instead of the loan here considered. The record shows that W. H. Young had procured a loan from the defendant company, giving as security certain property not involved herein; that the property in that loan was later conveyed by Young and wife to White and the Methvins and they assumed the unpaid balance of the mortgage obligation. It is shown by the record that, at the request of White and Methvin, who now owed both mortgage obligations to plaintiff, a part of the rents received from Anthony on the property involved was applied on the Young loan which they had assumed, thus giving defendants no right to complain.

Defendants further contend that the plaintiff should be required to account for $125 per month for rents from C. R. Anthony Company, the renters on the first floor of the property here involved, for full time of occupancy, alleging the plaintiff to be a mortgagee in possession. The record shows that White and Methvin executed a lease to C. R. Anthony Company for a monthly rental of $125 per month, to begin November 1, 1928, and ending November 1, 1933. In 1931 White conveyed his one-half interest in the property here involved to Rebecca Methvin. In February, 1932, Frank and Rebecca Methvin signed an agreement with C. R. Anthony Company whereby the rent was reduced to $100 per month from January 1st to September, 1932.

After the $125 period expired, C. R. Anthony Company continued to pay only $100 per month. It is shown that when the C. R. Anthony Company vacated the property Frank Methvin moved his pool hall into the building, taking charge of same for collection of rents, which refutes the claim of defendants that the plaintiff was a mortgagee in possession and should be responsible for the collection of the rentals.

Defendants claim that the notes and mortgages sued upon herein are usurious. We note that the $3,800 note provides for a payment of $25 per month for dues on 50 shares of stock, also $31.66 for interest and premiums due monthly upon the sum borrowed, making a total of $56.66 per month. The $31.66 is one-twelfth of the interest on $3,800 at 10% for twelve months. This total sum of $56.66 was to be paid each month. If we follow the same process of calculation as to the second or $4,000 note, we will have a $33.33 monthly payment for interest and a $25 as monthly due on 50 shares of stock. The two loans now amount to $7,800 and the monthly interest at 10% would amount to $65, and the record shows this sum collected until January 9, 1931, when the principal was diminished, by an application of stock credits, to $6,500, and the interest thereafter is shown to be $54.17 per month, until February 2, 1933, when another stock credit reduced the principal debt to $5,800, then the interest was $48.34 per month, when, by a resolution of the plaintiff company, after January 1, 1935, the interest was reduced to 8.4%, and after January 1, 1935, the interest, as shown, was $40.60. While it is true, as defendants contend, when the petition was filed in this foreclosure suit, the petition asked for 10% interest, the judgment based the interest at 8.4% after January 1, 1935. We are unable to accept defendants' plan of calculation showing usurious interest collected. The interest and monthly dues on stock payments, if separate obligations, cannot be commingled so as to show usury. Hickman v. Oklahoma Savings & Loan Ass'n, 169 Okla. 224, 36 P.

2d 928; Collings v. El Reno Bldg. & Loan Ass'n, 175 Okla. 216, 52 P. 2d 57; Walker v. Local Bldg. & Loan Ass'n, 176 Okla. 168, 54 P. 2d 1078.

The contention that the defendant association is without authority to issue installment stock because the stock is not fully paid for when issued, and the further contention that the issuance of full-paid and prepaid stock is unlawful because the stockholder is an investor and not a borrower, are also without merit.

"A building and loan association of this state may issue its stock in full paid, prepaid, and installment shares in such amounts and at such times and in such manner as its by-laws may provide." McGuire v. Oklahoma City Bldg. & Loan Ass'n, 112 Okla. 158, 241 P. 800; Walker v. Local Bldg. & Loan Ass'n, supra.

The defendants complain of the manner in which the plaintiff carried the ledger account after suit was filed, contending that it should not have been carried the same after as before suit was filed. It is contended that the rents collected after filing suit should have been applied to the principal then due upon amortization plan. It is shown that after suit was filed, the plaintiff continued to collect rents on the lower floor of the building involved and to apply the same to interest, dues on stock and taxes, insurance and repairs. It was shown by the testimony of witness English, and uncontroverted, that to compute interest at 10%, as provided by the notes, on the amount shown to be due when suit was filed, by the amortization plan, plaintiff would have been entitled to a judgment in the sum of $659.15 more than was obtained by handling the credits for rent after suit as they were handled, and charging only 8.4% interest after suit. Regardless of which of the two processes was technically correct, we must conclude that defendants cannot complain.

Defendants contend that their assignment of rents to plaintiff, heretofore shown, did not authorize the plaintiff to apply the rents to amounts due on stock purchased.

The notes specifically provided that the makers would pay $25 per month as monthly dues on 50 shares of capital stock, and the mortgage provided that the makers would pay the plaintiff association on said stock and loan the combined sum of the $25 and $31.66, the monthly interest on the note, each month. The assignment of the rents mentioned the $3,800 indebtedness due the plaintiff and the mortgage on the property involved, and further provided "and desires to further secure same by an assignment of the income, rents and profits of said real estate . . . . "

If the assignment of rents was to further secure the loan which was already secured by a mortgage, it should be applied to the payments provided by and shown in the note and mortgage securing same, and we must conclude that the application of the rents was fully authorized by the assignment instrument.

We must therefore conclude that the trial court committed no error in rendering judgment against the defendants, Frank and Rebecca Methvin.

We will now consider the objections and contentions of defendants as applied to the judgment rendered against them in favor of B. E. Morris, hereinafter referred to as Morris.

The record shows that on August 10, 1929, White and the defendants Frank and Rebecca Methvin borrowed $1,000 from G. W. Fuller, giving their note and mortgage against the property involved in this lawsuit, and also other property upon which the Security Building & Loan Association of Oklahoma City had a first mortgage. This note and mortgage was immediately assigned by Fuller to Morris.

On February 14, 1930, White and the Methvins borrowed from Morris $2,300, giving their note and mortgage against the property involved in this suit, and other property, owned exclusively by

White, against which the Mutual Savings & Loan Association had a mortgage.

Prior to the giving of either of the last mentioned mortgages, White and the Methvins had borrowed from the plaintiff, the American Savings & Loan Association of Anadarko, hereinafter referred to as plaintiff, the sum of $3,800, and later, $4,000, with mortgages on the property here involved and upon which this suit was based, as has hereinbefore been fully shown.

On December 29, 1931, the Security Building & Loan Association filed its petition to foreclose its mortgage, making Morris, White, and the Methvins defendants. Morris filed answer admitting the indebtedness and first lien on the property, and filed a cross-petition against White and the Methvins and sought to foreclose on her second mortgage. The property was sold under the Security Building & Loan Association's first mortgage but did not bring enough to satisfy the first mortgage indebtedness. Morris was given a foreclosure judgment against White and the Methvins on her $1,000 note and mortgage, the terms of which judgment, as shown, were not fully settled until March 11, 1936.

On November 3, 1931, the Mutual Savings & Loan Association filed its petition for foreclosure of the property belonging exclusively to White, making White and the Methvins and Morris defendants. Morris filed her answer and cross-petition asking for a judgment against White and for foreclosure on the $2,300 note, which was also signed by the Methvins, and admitting her second mortgage. The property was sold under the first mortgage of the Mutual Savings & Loan Association and did not bring enough to satisfy the first mortgage obligation and Morris was given foreclosure judgment against White on her $2,300 note. No part of the $1,000 judgment against White and the Methvins was ever paid, and no part of the $2,300 note or judgment against White was ever paid.

It is now shown that White and the Methvins signed the two notes owned by Morris, also the two notes owned by the plaintiff herein, and that all of said notes were secured by mortgage on the property here involved.

The petition in this action was filed on May 22, 1935, making White, Morris, and the Methvins defendants. Morris filed answer, also a cross-petition against White and the Methvins asking for judgment on her notes of $1,000 and $2,300 signed by them, and for foreclosure of her two mortgages securing same against the property here in controversy. The defendants answered, setting up the judgments obtained by Morris in the Security Building & Loan Association case and the Mutual Savings & Loan Association case as a bar to the cross-petition and relief asked for in the present suit. This contention was not sustained by the court, and judgment was rendered against the defendants in favor of Morris.

It appearing that White had died in 1936, after this action had been filed and service upon him had, and that he was a single man, and that this suit had not been revived against his heirs, the plaintiff dismissed the action as to White when the case was called for trial. The record further shows that on November 24, 1931, White executed a deed to Rebecca Methvin conveying all of his interest in the property here in controversy.

Defendants contend that the judgment obtained by Morris against White in the Mutual Savings & Loan Association action on the $2,300 is a bar to any proceeding in this suit on the same note. The same contention is made as to the $1,000 note set up in the Security Building & Loan Association suit, wherein Morris obtained judgment. To support this contention it is contended that a single and entire cause of action cannot be split so as to bring separate actions.

It must be admitted that Morris did not bring either of the actions wherein the judgments were obtained, but having been made a defendant therein and

having a mortgage on the same property involved, she would be compelled to set up her notes and mortgages in these suits in order to protect whatever right she might have because of her mortgage against that particular property, even though the same notes and mortgages were also secured by the property here involved. The $2,300 note held by Morris has never been reduced to judgment in so far as these defendants are concerned, that judgment being against White only and a foreclosure judgment and the mortgage affected only as to the property involved in that particular suit. The $1,000 note and the mortgage securing the same were reduced to foreclosure judgment only so far as that particular property mentioned in the mortgage was concerned, both notes and mortgages, as shown, being secured by the property here in controversy. There was no connection between the properties foreclosed in which Morris previously obtained judgment and the property here considered, in so far as the plaintiffs in those suits and the plaintiff herein is concerned, and she was deprived of the right to combine her separate securities shown in the same mortgage in either of the former suits and to ask for full relief against the various properties secured by her separate mortgages including the property here involved. Neither Morris nor the defendants were plaintiffs in the two former foreclosure suits. In Tracey v. Crepin, 40 Okla. 297, 138 P. 142, this court held:

"A cause of action set up in a cross-bill must be germane to the original controversy; and where a defendant seeks to set up new and distinct matter, not maintainable under the provisions of the Code as a counterclaim, unless such matter is involved in a proper determination of the subject-matter of the original suit, a defendant will be required to litigate it in a separate action."

To the same effect is the holding in Patterson v. Central State Bank, 75 Okla. 147, 182 P. 678, and Henderson v. Pebworth, 90 Okla. 187, 216 P. 472, and cases therein cited.

In so far as these defendants are concerned, the note and mortgage for $2,300 given by them and White to Morris has never been sued upon. The only judgment taken on that note was a foreclosure judgment against White. That suit and judgment did not necessarily create any change in the evidence of the indebtedness and Morris had a right to present the same note as her evidence of debt as to these defendants in the present case with her mortgage securing same on the property here involved. She had a right to pursue any one of the joint makers of the note severally without prejudice to her rights against other makers. Outcalt v. Collier, 8 Okla. 473, 58 P. 642; Horne v. Oklahoma State Bank of Atoka, 42 Okla. 37, 139 P. 992; 12 O. S. 1941 § 234. The question here is: Does Morris have a right to come into this suit by answer and cross-petition with her mortgages against the property here involved and her note, both signed by the defendants, and ask for the relief secured therein, or is she estopped because of a foreclosure judgment for the full amount of the note taken against one of the makers of the note and mortgage in another action against other property in which defendants had no interest? The mortgages secured the debts or obligations and not merely the evidence of it, and no change in the form of the evidence, whether it be the original note or the judgment, if the note be canceled in a former suit, can operate to discharge the mortgage. So long as the debt secured remains unpaid, a substitution of the evidence of the debt will not impair the lien of the mortgage. Unger v. Shull, Bank Com'r, 154 Okla. 277, 7 P. 2d 881; Lincoln National Life Ins. Co. v. Rider, 171 Okla. 262, 42 P. 2d 842; Anderson v. Barr, 178 Okla. 508, 62 P. 2d 1242. What has been said relative to the $2,300 note is also determinative of the rights of Morris in the present action on her $1,000 note and mortgage, even though the judgment in that case was a foreclosure judgment rendered against the property in that suit and against these defendants also. It was the same note, and the same mortgage given

against the property here involved to secure the same.

The defendants further insisting that the former judgments obtained by Morris are a bar to another action in this suit, and further contending that a single and entire cause of action cannot be split so as to bring separate actions, further say that, at the time the action was brought by defendant and cross-petitioner Morris in the Mutual Savings & Loan action, she could have foreclosed the same note and mortgage against the Methvins on lot 7, block 49, the property here involved. As has been shown, Morris did not bring the Mutual action, and furthermore an attempt on her part to have the plaintiff herein, the American Savings & Loan Association, made a party to that suit and be forced to foreclose on its prior mortgage against the property here involved, wherein the Mutual Savings & Loan Association had no interest, would have been properly disallowed by the court on the ground that it was an attempt to litigate a new and distinct controversy between herself and the defendant herein, in which the Mutual Savings & Loan Association, the plaintiff therein, had no interest and was wholly foreign and not germane to anything set up in the original suit. It has nothing to do with nor is governed by any authorities denying the right to split causes of action. See Tracey v. Crepin, supra, and Patterson v. Central State Bank, supra.

It is contended that the $1,000 judgment obtained by Morris in the Security Building & Loan suit had become dormant prior to being set up in her answer and cross-petition in the present suit. This contention is based upon the provisions of 12 O. S. 1941 § 735, as to statute of limitations on judgments where no execution is sued out within a certain time. As has been stated herein, relative to the $2,300 judgment, a mortgage lien on realty is not merged nor extinguished by a foreclosure decree or judgment, and such statute could not apply. Anderson v. Barr, supra. In that case this court said:

"'The plaintiff in error contends that the debt due defendant in error was lost in the judgment of foreclosure, and that said judgment has been dormant long prior to the inception of this action, under section 442, O. S. 1931. It is not necessary in passing on this contention to decide whether a decree of foreclosure is that kind of a judgment which would become dormant unless execution were issued once in every five years. However, there is good reason and authority for the view that section 442, O. S. 1931, does not apply to a decree of foreclosure.'"

The limitation statute does not apply for the additional reason that no deficiency judgment was given in either of the foreclosure suits mentioned, nor can there be such until the property secured by the mortgage has been disposed of under the mortgage foreclosure judgment and a deficiency judgment determined by the court. No such judgment was given in either of the other suits mentioned. The property here involved was given as security on both notes owned by Morris, and she is in this suit asking for judgment and foreclosure, subject to the two prior securities owned by the plaintiff herein.

It is contended that cross-petitioner Morris is not entitled to prosecute this action since there is nothing in this cause to show that the property mortgaged by White and defendants to the Mutual Savings & Loan Association and the Security Building & Loan Association was ever foreclosed; that the only competent evidence to show the same would have been copy of the foreclosure and sale proceedings. Morris asserted the facts of the foreclosing in answer to the plea of estoppel by defendants, and defendants have built the major portion of their objections and contentions in their various briefs filed herein, as to Morris, around the facts of the two foreclosures and judgments rendered for Morris, and nowhere have attempted to deny the contentions that the properties had been sold under foreclosure of prior mortgages and failed to bring sufficient sale price to satisfy the mortgage in either case. Furthermore it was not necessary that Morris set up such proof in

this proceeding. She filed her answer and cross-petition in this suit as an independent action, and the judgments obtained by her in the previous suits were purely matters of defense on the part of the defendants and have been so treated by them. The contention is without merit. This court is convinced that the trial court committed no error in rendering judgment against the defendants in favor of Morris.

Finding no error in the judgment of the trial court, the same is affirmed.

GIBSON, V. C. J., and OSBORN, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., dissenting.

---

RILEY, J. (dissenting). Where in the record reference is made to "the payment of dues," it is meant the installment payments on the purchase price of the stock in the association bought by the borrower. The words "fines, penalties, etc.," refer to penalties charged for delinquency in the payment of these installments or interest. The record does not disclose any fines charged to defendants, and the transactions involved are not different in that respect from the affairs of the ordinary building and loan association.

However, the record does not sustain the holding in paragraph 5 of the syllabus, or the holding on page 13 of the majority opinion, to the effect that the purchase of stock under agreement for its payment in monthly dues is a separate contract from the mortgage and loan transaction.

The three Oklahoma decisions cited as authority for the majority view disclose an entirely different situation from that presented in the case at bar. Each of said cases discloses a separate contract signed by the borrower for the purchase of stock. Those contracts are the basis of the holding of separate obligations to pay the contract price for the purchase of the stock and to pay the obligation represented by the note and mortgage. In each of those cases it is possible to carry out the two transactions separately.

But in the case at bar no separate agreements are shown by the record, either as to the $3,800 or the $4,000 loan. Reference to the note executed by the borrowers in each of the transactions presented in the cited cases will disclose that the makers of the note, on the face thereof, agree to pay the monthly dues (installments) on the shares of stock and a separate monthly amount as interest and premium due on said sum borrowed. In the case at bar there is no provision in the note that any part of the monthly payments are to be applied to the principal indebtedness. Moreover, each of the mortgages requires the mortgagor to pay the association on the stock and loan transactions one and the same stipulated amount each month. The amount stipulated is exactly the amount required to pay the monthly installments on the purchase price of the stock and monthly interest falling due on the principal loan.

Bearing in mind that no separate contract of purchase of stock is shown by the record, the transaction is necessarily binding, tied together and inseparable. Thus conclusively the united words employed establish that the stock purchase agreement and the loan agreement are not separate obligations. So it is evident that the transactions involved in the case at bar are entirely different from those in the cases of Hickman v. Oklahoma Savings & Loan Association, 169 Okla. 224, 36 P. 2d 928; Collings v. El Reno Building & Loan Association, 175 Okla. 216, 52 P. 2d 57; and Walker et al. v. Local Building & Loan Association, 176 Okla. 168, 54 P. 2d 1078, relied upon by the majority.

Another provision in the mortgages presented, not disclosed by the opinions in the other cases, is that the mortgage indebtedness "shall be discharged by the cancellation of said stock at maturity." The words employed unite by no uncertain terms the mortgage indebtedness agreement and the stock purchase

agreement. The provision for liquidation of the loan and the obligation to purchase stock are joined by words and are inseparable. The phrase "shall be discharged" indicates a mandatory contractual provision that the borrower, after full payment of the stock, is required to surrender and cancel same in payment of the mortgage indebtedness. Thus the case at bar is squarely within the rule of law in Security Thrift Syndicate v. Tidwell et al., 190 Okla. 377, 123 P. 2d 955. Since the borrower has no option but must surrender and cancel the stock in satisfaction of the mortgage indebtedness, then under the Tidwell Case, supra, the stock purchase contract and the mortgage loan contract constitute one transaction. So the words of the one instrument show an agreement to charge and collect usury provided only that the rate of interest is more than that allowed by law. By law the contract rate of interest is 10%. That amount was charged on the loan. Then, by joinder of an agreement to purchase stock and cancel it in liquidation of the loan, usury was surely charged. Benefit for the loan or deference of money is limited to 10%. No additional benefit can lawfully be conferred upon the lender. Presumptively, the sale of stock was beneficial to the lender. Its joinder in one instrument was usurious.

Then there is the matter of assignment of rents. The contract made no provision whatever for applying the rents collected to the purchase price of the stock, and the mortgagee had no authority to so apply the rents. It may be, however, that the mortgagor gave consent to so apply the rents collected. No doubt the mortgagors received full credit for the rents in the reduction of the mortgage indebtedness. But here we are presented with a contractual provision for maturity of certain shares of stock, the subsequent cancellation of the same, and application of the proceeds to the reduction of the mortgage indebtedness, and this provision is an integral part of a contractual agreement executed whereby the limit of interest was charged on a loan of money. The whole is too much as limited by law.

In view of the provisions in the notes and mortgages mentioned, and the fact that the record does not show a separate contract for the purchase of stock, I am convinced that there were no separate agreements sufficient to support the view of the majority.

Moreover, as shown by this record, a variance is presented not shown in the ordinary building and loan transaction. The borrowers here were required to purchase more stock in the association than the amount of the respective loans. In the first loan (the $3,800 loan), the borrowers were required to purchase 50 shares, or $5,000 in stock, in the association. That amount of stock, if carried to maturity, would have been $1,200 more than enough to retire the mortgage indebtedness. In the $4,000 loan the same amount of stock was supposed to have been purchased, which at maturity would have been $1,000 more than enough to retire the mortgage indebtedness. In view of the contractual provision for cancellation of the stock when matured, contractual requirements were not only usurious — they were unconscionable.

For these reasons, I respectfully dissent.