THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, Plaintiff*, v. THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, *Defendant.*

No. 16,284.

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS — *Permission to do Business — Subsequent Legislation Not Applicable.* Where a foreign corporation complies with the terms of a statute providing that upon performing certain conditions it shall possess in this state all the rights, privileges and franchises conferred by law upon a domestic corporation, it will not be deemed to be within the purview of a subsequent enactment requiring foreign corporations seeking to do business in the state to make application to a charter board for permission to do so, this requirement not being exacted of domestic corporations already formed.

2. —————— *Fees—Increase of Capital Stock—"Authorized" Capital.* The statutes (Gen. Stat. 1901, § 1265; Laws 1907, ch. 140, § 23) requiring the payment of certain fees upon the increase of the capital stock of a corporation doing business in this state refer to an increase in the authorized capital, and such fees are payable whenever there is an increase in the power of the corporation to issue stock in addition to the amount of its original capitalization, regardless of whether any part of the new stock is actually issued or subscribed for.

3. —————— *Increase of Stock a Question of Fact under the Pleadings.* A pleading which denies that a corporation organized under the laws of another state has increased its capital stock unless that result follows from certain facts stated, which do not include the filing of any certificate of increase with the secretary of state of such other state, in effect denies the filing of such certificate and thereby puts the question of such increase in issue.

4. —————— *Liability for Fees Not Affected by Failure to File Certificate in this State.* The fact that the statute provides that the fee exacted when the capital stock of a corporation doing business in this state is increased shall be paid at the time the certificate of such increase is filed with the secretary of state of Kansas does not enable a foreign corporation, which has effected a valid increase in its capital, to defeat or postpone the right of the state to exact such payment by omitting to file such certificate.

Original proceeding in quo warranto. Opinion filed December 11, 1909. Demurrer to answer overruled.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for the plaintiff.

*W. F. Evans, Frank Hagerman,* and *R. R. Vermilion,* for the defendant.

The opinion of the court was delivered by

MASON, J.: This is an original action brought by the state against the St. Louis & San Francisco Railroad Company to oust it from the exercise of the franchise of doing intra-state business in Kansas (1) without complying with various requirements exacted of foreign corporations seeking to do business here, including the payment of certain fees, and (2) without paying further fees on account of a recent increase in its authorized capital stock. It is submitted upon a demurrer to the answer.

Section 5871 of the General Statutes of 1901, which originated in 1870 and has been in force in its present form since 1887, reads in part as follows:

"Any railroad company of this state may sell or lease the whole or any part of its railroad and branches, constructed or to be constructed, or any interest therein, together with all the property, rights, privileges and franchises thereto pertaining, to any railroad company organized or existing under the laws of this state or of any state or territory of the United States; . . . provided, however, that no purchase, lease or guaranty under this act shall be entered into unless the line of railroad so purchased or leased, . . . shall when constructed form a continuous line with the road of the company purchasing, leasing or guaranteeing, either by direct connection therewith, or through an intermediate line or lines constructed or to be constructed, which such company shall have the right by contract or otherwise when completed to use or operate. . . . Any railroad company of any state or territory which shall so purchase or lease a railroad or

railroads in this state shall possess and enjoy within this state all the rights, powers, privileges and franchises conferred by the laws of this state upon a railroad corporation of this state: . . . provided, further, that before any railroad corporation of any other state or territory shall be permitted to purchase or lease a railroad in this state, such corporation shall file with the secretary of state a true copy of its charter or articles of incorporation, together with a certified copy of the resolution of its board of directors authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, in the same manner as may be provided by law for the service of process upon railroad corporations of this state; and said resolution to further contain a stipulation that said company shall be and become subject to the provisions of this act. Upon the filing as aforesaid of a true copy of its charter and of such resolution, such foreign company shall be and become fully entitled to the benefits of this act; provided, that no such foreign corporation so purchasing or leasing under this act, which may be sued or impleaded in any of the courts of this state upon any contract made or executed in this state or to be performed in this state, or for any act or omission, public or private, arising, originating or happening in this state, shall have the right to remove any such cause from said state court into any of the federal courts held or sitting in this state on the ground that such corporation is a nonresident of this state; but as to such litigation and the jurisdiction of the court in relation thereto it shall be deemed to be a domestic corporation of this state, and subject to the jurisdiction of its courts in all respects as if formally incorporated in this state."

The answer admits the noncompliance with the requirements referred to, but alleges that in 1896 the defendant, a corporation organized under the laws of Missouri, for the purpose of taking advantage of the statute quoted from, filed with the secretary of state of Kansas a copy of its charter and articles of incorporation, together with a certified copy of a resolution of its board of directors authorizing the service of process upon its agents in the state and agreeing that it

The State v. Railroad Co.

should be subject to the provisions of the statute; that it then purchased a line of railroad in this state which formed a continuous line with its road in Missouri, and which it has ever since operated in connection there-with.

In 1898 a general corporation law was enacted re-quiring persons seeking to form a corporation under the laws of this state and foreign corporations seeking to do business here to obtain permission from the state charter board and to pay certain fees. (Gen. Stat. 1901, §§ 1260, 1264.)   These provisions are perpetuáted in sections 9, 13, 21 and 23 of chapter 140 of the Laws of 1907.   They have not been made applicable to domestic corporations organized prior to 1898, and the defendant asserts that it is exempt from their operation, under the facts pleaded.   The plaintiff maintains the con-trary.   The issue thus formed presents the first ques-tion to be determined under the demurrer.

It has been held that the phrase "seeking to do busi-ness in this state" applies to foreign corporations which had engaged in business here prior to 1898 (*The State v. Book Co.*, 65 Kan. 847, 848) and desired to continue doing so, even although their presence here had been taken notice of and acquiesced in by the state (*The State v. Telegraph Co.*, 75 Kan. 609, 618, 659).   But the situation of the defendant in the present case is very different from that of a foreign corporation which has been allowed to operate within this juris-diction merely by sufferance, even although it may have been subjected to some form of surveillance or regula-tion.   The act of 1870 offered to foreign railroad cor-porations certain privileges upon certain conditions. If they purchased local roads forming a continuous line with their own, and subjected themselves to the provi-sions of the act, they were to "possess and enjoy within this state all the rights, powers, privileges and fran-chises conferred by the laws of this state upon a rail-road corporation of this state."   (Gen. Stat. 1901,

§ 5871.) The companies which complied with these conditions constituted a distinct class. They stand upon a footing entirely different from that of ordinary foreign corporations, and indeed occupy practically the same status as domestic corporations. This has been recognized by the legislature and by the courts. In a subsequent statute foreign corporations which have availed themselves of the act referred to are described as having become corporations of this state. (Gen. Stat. 1901, § 5872.) And this court has been at pains to suggest that such companies were not within the operation of the formerly existing rule which denied foreign corporations the right to avail themselves of the statute of limitation. (*Williams v. Railway Co.,* 68 Kan. 17, 29.)

In *American Smelting Co. v. Colorado,* 204 U. S. 103, it was held (four justices dissenting) that a statute providing that a foreign corporation upon coming into the state should be subjected to all the liabilities of domestic corporations implied that it should be subjected to no greater liabilities, and that an acceptance of the conditions of the act by a foreign corporation resulted in a contract which prevented the state from imposing any greater tax upon it than was exacted from domestic corporations, and that this restriction lasted for twenty years—that being the term of life of a domestic corporation. It is not necessary to decide whether the principle there announced would apply to the present case. Railroad companies originally created under the laws of another state, but which have availed themselves of the Kansas act of 1870, are fairly to be described as at least quasi-domestic corporations. In 1886 it was thought necessary to pass a law expressly exempting such companies from the requirements imposed upon domestic companies relative to resident directors and the maintenance of general offices in the state. (Gen. Stat. 1901, § 5872.) We think it clear that the provisions of the act of 1898 re-

lating to foreign corporations seeking to do business in the state were not intended to apply to them. We do not think that the legislature intended, if it had the power, to require a railway company to make application to the charter board for permission to do business here, after it had entered the state under a statute granting it, upon specified conditions with which it had fully complied, the same privileges and franchises enjoyed by local organizations. We therefore conclude that the answer states a good defense to the portion of the petition relating to the failure of the defendant to make application to the charter board for leave to do business in the state, and to the payment of fees in connection therewith.

The remaining question is whether the defendant is required to pay any fee on account of the increase in its capital stock. According to its answer the original capital was $50,000,000. On June 18, 1901, its stockholders, by an order duly made, directed that the capital stock should be increased to $100,000,000, but no part of this authorized increase was ever paid in, none of the additional stock was ever sold, and no certificates were issued therefor. On August 27, 1907, a like order was made authorizing a further increase of $100,000,-000, but none of this additional stock was ever subscribed for or issued. No certificate of increase was ever filed with the secretary of state of Kansas.

Section 7 of the corporation act of 1898 reads as follows:

"When any corporation doing business in this state shall hereafter increase its authorized capital stock it shall pay to the state treasurer,  .  .  .  for the benefit of the permanent school fund, the fee of one-tenth of one per cent of the amount of such increase, and shall pay to the secretary of state, for filing and recording the amendment or certificate authorizing such increase, the same fees as provided in section 5 of this act for filing and recording charters; and the secretary of state shall not file, record or certify to such in-

crease of its authorized capital until all the provisions of this act have been fully complied with." (Laws 1898, ch. 10, § 7.)

In 1901 this was amended, no important change being made excepting as to the amount of the fee to be paid. (Gen. Stat. 1901, § 1265.) In 1907 the whole corporation act was revised, and the following provision was substituted for that just quoted, the earlier one not being in terms repealed, although such a repeal was mentioned in the title:

"When any corporation doing business in this state shall increase its capital stock, as heretofore provided, such corporation shall pay to the secretary of state, at the time of filing the certificate thereof, a capitalization fee upon the amount of such increase, which fee shall be computed in the same manner as heretofore provided for the original capitalization; provided, that the minimum capitalization fee for increase of capital stock to be paid by any corporation, foreign or domestic, shall be ten dollars." (Laws 1907, ch. 140, § 23, subdiv. 5.)

Section 20 of the act of 1907, which is not materially different from section 1273 of the General Statutes of 1901, reads:

"Any corporation organized under the laws of this state may increase its capital to any amount not exceeding three times the amount of its authorized capital by vote of the stockholders as heretofore provided, or such corporation may increase its capital to any amount by vote as aforesaid, provided there be an actual, *bona fide,* additional paid-up subscription thereto equal to the amount of such increase, and such increase shall become a part of the capital of the corporation from and after the date of filing the certificate of such amendment in the office of the secretary of state." (Laws 1907, ch. 140, § 20.)

Section 27 of the act of 1907 is precisely the same as section 1267 of the General Statutes of 1901, which reads:

"Any corporation organized under the laws of an-

The State v. Railroad Co.

other state, territory, or foreign country, and authorized to do business in this state, shall be subject to the same provisions, judicial control, restrictions, and penalties, except as herein provided, as corporations organized under the laws of this state."

It therefore appears that at all times since the defendant entered the state the law has required both domestic and foreign corporations to pay a fee upon every increase of their capital stock, and the defendant is liable for such payment as a condition for continuing to do an intra-state business in Kansas, unless it is relieved therefrom upon one of these grounds: (1) That it is also engaged in interstate commerce; (2) that the facts stated do not show an increase of capital within the meaning of the statutes; and (3) that the omission to file a certificate of increase with the secretary of state prevents liability attaching for the payment of the fees.

All questions growing out of the fact that the defendant does an interstate as well as an intra-state business have been passed upon in *The State v. Telegraph Co.,* 75 Kan. 609, and nothing now need be said upon the subject further than that the court adheres to the views expressed in the opinion in that case.

The second question suggested involves this one: Does the statute relating to the payment of fees upon the increase of the capital stock of a corporation have reference to actual or potential stock? It is said that when the phrase "capital stock" is used in a statute it usually, but not always, means stock which has been paid up or is subject to be paid up. (10 Cyc. 365.) The real meaning in a particular instance is of course to be determined by the subject matter and context. (Illustrative cases are collected in 1 Words & Ph. Jud. Def. pp. 960, 961.) There is no difficulty in determining that in the statutes under consideration the authorized capital stock is meant. The original law on the subject (Gen. Stat. 1901, § 1265) referred explicitly to an

increase in the "authorized" capital stock. The corresponding part of the present act (Laws 1907, ch. 140, § 23, subdiv. 5) must be deemed a continuation of the earlier provision, not a new enactment. (Gen. Stat. 1901, § 7342, subdiv. 1.) In the act of 1907 the provisions for the payment of fees based upon the original capitalization and upon the increase are included in the same section (Laws 1907, ch. 140, § 23), the first sentence of which relates to the payment of a fee based upon the amount of the "authorized" capital. In the subsequent provision relating to an increase of the capital stock the word "authorized" is not repeated, but it is perfectly obvious that the same character of capital is meant. The repetition of the term "authorized" was unnecessary to make the meaning clear, because that was plainly the kind of capital that was in the mind of the legislature. That body having fixed a fee to be paid, measured by the authorized capital, added:

"When any corporation . . . shall increase the capital stock . . . such corporation shall pay . . . a capitalization fee upon the amount of such increase, which fee shall be computed in the same manner as heretofore provided for the original capitalization." (Laws 1907, ch. 140, § 23.)

This can only mean that the additional fee is to be paid whenever the corporate power to issue stock is increased, regardless of whether any new stock is actually issued or subscribed for.

If, therefore, the pleadings show an increase in corporate capacity to issue stock—an amendment of the charter in that regard—the defendant is liable for the payment of the statutory fee therefor. The answer denied that such an increase has taken place unless that result necessarily follows from the steps detailed. These steps, however, fall just short of the consummation of the increase. We must presume that the statutes of Missouri, like those of Kansas, make the increase of the corporate stock of a domestic corporation

effective from the time of the filing of a certificate with the secretary of state. Unless such a certificate has been filed with the secretary of state of Missouri there has been no change in the defendant's chartered power. The plaintiff, by pleading a valid increase of capital, asserts that a certificate has been filed in Missouri. The defendant denies this by saying that no increase has been effected, although all the other steps necessary to that end have been taken. Issue is thus joined on this question of fact, and the answer is therefore not demurrable in this aspect of the case.

The failure of the defendant to file a certificate of an amendment to its charter with the secretary of state of Kansas is a very different matter. That is not a prerequisite to a valid change, nor to liability for the fee exacted on that account. True, the statute makes the fee payable when the certificate is filed, and by delaying such filing the corporation may incur an additional liability under a new statute (*Cudahy v. Denton*, 79 Kan. 368), but it can not by its own neglect defeat or postpone the right of the state to exact the payment.

For the reasons stated the demurrer to the answer is overruled.

PORTER, J. (concurring specially) : I concur in the result but not in all that is said in the opinion respecting the liability of the defendant to pay fees on a potential increase of its capital. I concur in holding that the defendant can not avoid liability for payment of an increase of its capital by its own neglect to file a certificate of such increase with the secretary of state here; and I think if it has been authorized to increase its capital stock and has in fact issued so much as one share of the increase it becomes liable for the payment of fees upon the entire amount of increased capital,

but that the power to issue must be first exercised before the state can lawfully exact payment of fees for such increase.