## McGUIRE v. OKLAHOMA CITY BLDG. & LOAN ASS'N.

No. 14577—Opinion Filed May 5, 1925.

Rehearing Denied Oct. 29, 1925.

1. **Building and Loan Associations—Issues of Stock—By-Laws Controlling.**

A building and loan association of this state may issue its stock in full paid, prepaid, and installment shares in such amounts and at such times and in such manner as its by-laws may provide.

2. **Same—Validity of Stock Issues and Contract for Installment Stock.**

Where the by-laws of such building and loan association provide that full paid stock shall draw six per cent. dividend, payable semi-annually on the first day of January and July of each year, but no more, and it is not shown that prepaid or installment stock of said association does not share in dividends equal to or greater than said six per cent. allowed on the said full paid stock, the issuance of said full paid stock is not unlawful and will not avoid a contract for purchase of installment stock.

3. **Same—Loan not Usurious.**

Where a party enters into a contract to purchase stock and to become a borrower from a building and loan association, the two transactions have no connection with each other and cannot be commingled to support an action in usury.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Williiam H. Zwick, Judge.

Action by the Oklahoma City Building & Loan Association against C. L. McGuire. Judgment for plaintiff. Defendant brings error. Affirmed.

Wm. P. Harper, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Oklahoma county, Okla., by the Oklahoma City Building & Loan Association, defendant in error, plaintiff below, against C. L. McGuire, plaintiff in error, defendant below, to recover balance due on two contracts, or notes, and for foreclosure of mortgages, given to secure said contracts, or notes, given for money loaned and for ten shares of stock in said association.

The parties will be referred to in this opinion as plaintiff and defendant, as they appeared in the lower court.

The contracts or notes, and the mortgages sued upon in each cause of action are identical, except the date, the due date, the amount contracted to be paid and the number of stock certificates referred to in the contracts, or notes, and for the purposes of this opinion it will only be necessary to set forth one of the contracts, or notes, which is as follows:

"$800.00                    Oklahoma    City, Oka.,
                                "Feb. 14th, 1921.

"In consideration of the sum of eight hundred dollars, borrowed money, the receipt of which is hereby acknowedged, I promise to pay to the Oklahoma City Building & Loan Association, the sum of four and 80--00 dollars per month, the same being monthly dues on 8 shares (Certificate No. 9996, Series No. 267) of the capital stock of said association, also the sum of six and 64-100 dollars per month, the same being interest and premium due monthly upon said sum so borrowed, together with all fines chargeable according to the by-laws of said association upon arrears of such payment.

"And I promise to pay said association all of said sums of money amounting in the aggregate to eleven and 44-100 dollars on the 20th of each and every month until each af such shares shall reach the value of $100.00 or said loan shall be otherw'se sooner canceled and discharged.

                    "(Signed)  C. L. McGuire."

The petition alleges that certain payments had been made, but that the defendant had made default in the payment of the interest and of the installments on the stock subscribed for, and that there was a balance due on the first note of $833.14 and $103.98

taxes, levied against the real estate, described in the mortgage, and $80 attorney's fee, and on the second cause of action that there was a balance due of $194.50, and $18 attorney's fee, with interest on the principal sums of ten per cent. from the date of the filing of the petition in this cause, and asked judgments for the amounts sued for, for foreclosure of the mortgages, and sale of the mortgaged property. Copies of the notes, or contracts, and mortgages were attached to the petition as exhibits.

The defendant answered, admitting the receipt of the money and the execution of the contracts, or notes, and mortgages, but as a defense alleged the following:

"For further answer defendant says that for a long time prior to the time of the execution of the notes and mortgages sued on the plaintiff held out and represented to the general public and to this defendant that it was a mutual building and loan association organized under and conducting its business in accordance with the laws of the state of Oklahoma. That at the time of the execution of the notes and mortgages sued on defendant was familiar with the laws relating to mutual building and loan associations and relying upon the representations of plaintiff that it was a mutual building and loan association within the purview of the laws relating to such associations subscribed for the number of shares of stock of the plaintiff as alleged in plaintiff's petition and executed the notes and mortgages sued on, and to pay the monthly installments of premium and interest as set out and alleged in plaintiff's petition, believing that said contract was in all respects valid under the laws of the state and that as a stockholder of said association he had the same rights and privileges, and was liable to no greater burdens or obligations than any other stockholder of said association, and that said plaintiff was a mutual building and loan association as contemplated by the laws of said state.

"That at the time of the subscription for such stock, and the execution of said notes and mortgages defendant was not furnished with a copy of plaintiff's by-laws, but that the stock by him subscribed for, together with the by-laws rightfully accompanying such stock were at all times retained by plaintiff. That a long time subsequent to the subscription for such stock and the execution of said notes and mortgages, and after defendant had paid a number of the installments coming due and payable on such stock, and had paid a number of installments of premiums and interest required to be paid under said contract, the defendant became advised and now alleges, that the plaintiff is not a building and loan association within the purview of the laws of

the state Oklahoma, and was not at the date of the subscription for such stock by defendant subscriber nor entitled under the law to carry on its business as a building and loan association nor to make and enter into the contracts sued on herein for this, that plaintiff issues stock, a large amount of which was outstanding at the time of the execution of said notes and mortgages, whereby the holders thereof were guaranteed certain and definite earnings upon stock held by them, and whereby any and all losses suffered by said association were paid by installment and prepaid stock, and whereby all dividends and earnings on installment stock, were postponed and not paid until all losses, if any, expenses of the conduct of the business of such association, and interest on such favored shares had been first paid, and that said shares of stock so issued by plaintiff and said contracts entered into by plaintiff with defendant are all in violation of the laws of this state. * * *"

The plaintiff replied by way of general denial.

Upon these issues the cause proceeded to trial to the court without the intervention of a jury, the jury being specially waived.

The court rendered its judgment in favor of the plaintiff and against the defendant for the recovery of the full amount sued for, attorney's fees, costs, for foreclosure of the mortgages, and for sale of the property, and for the amount of taxes paid out upon the real estate, described in the mortgages.

Motion for new trial was filed, heard, and overruled; exception reserved by the defendant, and the cause comes regularly upon appeal to this court.

There are only two propositions urged by attorney for defendant in his brief: First, that the court erred in not holding:

"That the contract sued upon was ultra vires and void, as against the law and public policy of the state of Oklahoma"

—and, second, the court erred:

"In holding that the plaintiff is a valid mutual building and loan association within the purview of the laws of the state of Oklahoma, and entitled to enforce contracts made with the citizens of said state."

The evidence discloses that there was no denial of the debt, the execution of the contracts, or notes, and mortgages, and there is no evidence to show that the defendant did not have full knowledge of the by-laws of the association, and there is no evidence of any misrepresentation or fraud practiced by plaintiff by which the defendant was misled to his detriment in making said contracts and executing said mortgages. The

by-laws of the association were introduced and a blank form of stock issued by the association for its full paid, nonassessable, nonparticipating stock, with coupons for dividends attached, and the evidence of A. L. Welch, an officer of the company, is that the company issued three classes of stock, full paid, prepaid, and installment; that six per cent. dividend, payable semi-anually on the first days of January and July of each year, was allowed on the full paid stock, but there was no agreement as to the amount of dividends to be paid upon prepaid and installment stock, and that the method of computing earnings and dividends on the prepaid stock was set out in sections 3 and 4 of the by-laws, and that no dividends were paid out until after the losses and taxes were first paid out of the earnings. There was no evidence to show what the prepaid and installment stock had always earned, although the plaintiff sought to show that, as a matter of fact, the prepaid and installment stock had always earned more than the full paid stock, but said testimony was excluded upon objections being made by attorney for defendant. The blank form of stock contract for the full paid stock contains the provision that the holder should receive as dividends upon each $100 share the sum of six per cent. per annum, payable semi-annually on the first days of January and July of each year, according to the dividend coupons attached.

The copy of the by-laws, introduced in evidence, under the head of "Stock or Shares," in part, is as follows:

"Shares may be issued in the following kinds of stock, to wit: installment stock, full paid stock and prepaid stock, and such other stock as the board of directors may hereafter provide, and each or all of said kinds of stock may be issued in classes.

"Full paid stock may be issued at any time in shares of the par value of $100, dividends or earnings at an amount determined by the board of directors, payable semi-annually, on the first day of January and July of each year, shall be paid thereon; Provided, that no dividends or earnings shall be paid if withdrawn within one month from date of issue at the request of the stockholder; also that the board of directors have the power to lower the rate of earnings on this class of stock upon giving 30 days' written notice of their intention so to do, the rate not to exceed in any event seven per cent. per annum.

"Prepaid stock may be issued at any time in shares of the par value of $100 for an advance payment of not less than $50 per share. This stock shall be credited with

the proper portion of profits earned by the association, in the same manner as installment stock and shall mature when the amount paid in, together with accumulated profits, shall reach the sum of $100 per share."

And, under the head of "Dividends," the by-laws provide:

"At the regular monthly meeting of the board of directors in the months of January and July of each year they shall declare such dividends as may accrue from the earnings of the association after deducting therefrom all expenses and losses, and also such sums as they may reserve for the payment of expectant losses. The dividends so declared shall be credited to the account of the respective stock in proportion to the amount paid on such stock and the time such amount has been in the treasury of the association since the dividend day last preceding and shall be credited on the pay days next after it is declared, and according to the provisions of these by-laws for the several kinds and classes of stock. No dividends shall be credited to any installment stock until said stock is six months old, and six monthly payments made thereon, and a holder of such stock withdrawing before a dividend has been credited to his stock shall receive no dividends whatsoever.

"If the reserve fund and undivided profits at any dividend period are not sufficient to pay any loss or losses that may have accrued since the previous dividend period, the balance of the loss or losses shall be charged up to all installment and prepaid stock in proportion to the net value thereof."

The above is all the evidence that is pertinent to the issues involved in this case.

The attorney for defendant in his brief relies upon the opinion of former Chief Justice Rainey of this court, in the case of Holt et al. v. Aetna Building & Loan Association, 78 Okla. 307, 190 Pac. 872, which was rendered construing the law of this state existing at the time the contract then under consideration was executed, relative to building and loan associations of this state, in which it was held that a contract, similar to the one under consideration in the present case, could not be enforced in this state as a building and loan contract, for the reason that the same was not authorized under the statute in existence in this state at the time said contract was entered into, and it was held in said case that:

"Under our law, as it then existed, a building and loan association was bound to treat its members equally, and any contract in contravention of the mutuality of the company was ultra vires and void."

The opinion further shows this to be true where it says:

"The foregoing discussion has reference to the building and loan association laws as they existed at the time of the transaction herein involved. Since that time material amendments have been made to the law."

The Legislature of this state (chapter 200, section 3, Session Laws of 1913, section 5420, Comp. Stat. 1921) changed the then existing statute and authorized building and loan associations, doing business in the state of Oklahoma, to issue stock in full paid, prepaid, or installment shares in such amounts and at such times and in such manner as the by-laws may provide, which statute reads as follows:

"Any building and loan association doing business in the state of Oklahoma may issue its stock in full paid, prepaid, or installment shares, in such amounts and at such times and in such manner as the by-laws may provide, and each building and loan association, or other persons, partnerships, or corporations coming under the provisions of this act shall file with the Bank Commissioner, a certified copy of its chapter, constitution, and by-laws, and its plan of conducting business, together with a statement, verified by oath of its president and secretary, showing the amount of authorized capital stock, assets and liabilities, the kind and character of the same, together with any other information which may be required, which statement, verified by oath, shall be filed semi-annually thereafter. Any such building and loan association may charge a fee of not to exceed $5 for examining each piece of real estate mortgaged to any such association to secure a loan."

The section following requires the Bank Commissioner to approve the constitution, by-laws, plans, and methods of conducting business of such association before it shall be authorized to do business in this state. And the next section requires that the Bank Commissioner shall issue a certificate of authorization to such an association before it can transact business in the state.

The above quoted section, No. 5420, Comp. Stat. 1921, had been enacted by the Legislature before the decision of this court was handed down in the Holt Case, heretofore cited, but it was not applicable to the Holt Case for the reason, heretofore stated, that this act was not operative at the time the contract in the Holt Case was entered into, and the court, in passing upon this question in the Holt Case, clearly intimated that it was not its intention at that time to consider or apply the above-quoted statute to the principles involved in that case. We have not been able to find, and attorneys have not cited, any case in which the precise ques-

tion involved here has been passed upon by this court since the above-quoted statute was enacted into the laws of this state. We are of the opinion that the language used in the statute is clear and unambiguous and needs no construction at our hands to carry out the meaning and intent of the Legislature when it said that the building and loan associations of this state may issue their stock in full paid, prepaid, or installment shares in such amounts and at such times and in such manner as the by-laws may provide. The by-laws of this association, as we have heretofore shown, provide for the issuance of this full paid stock and for the payment of dividends to the amount of six per cent., but no more. These by-laws, under the statute, were required to be submitted and approved by the Bank Commissioner of this state, and it is presumed, although the evidence does not show it, that they were so submitted and so approved by the Bank Commissioner of this state. Its methods and plans of doing business were also approved and certificate issued to plaintiff to do business in this state; then, under the plain wording of the statute and the by-laws heretofore referred to in this opinion, the company had authority to issue this stock under the conditions disclosed here. The Legislature had the power to give it this right, and it did so, in our opinion. Certainly such contract is not prohibited by legislative enactment in this state. The defendant, in this case, had the right to contract for any of the three kinds of stock issued by this association. The defendant had a right to inform himself as to the provisions of the by-laws of the association, and if he did not so inform himself it was his own fault, and there is nothing in the evidence to show that he did not do so. We are of the opinion that the judgment of the lower court was correct in upholding the contract sued upon here.

Upon the authority of the decision of this court, in the case of Aetna Building & Loan Association v. Hahn, 82 Okla. 110, 198 Pac. 331, we conclude that the amounts charged for interest and on stock are two separate and distinct contracts, and where the interest charged is not beyond the legal rate, it will not be treated as a usurious loan, and the more recent case of Collings et al. v. Industrial Savings Society, 94 Okla. 271, 221 Pac. 1036, is to the same effect.

We are, therefore, of the opinion that the judgment of the lower court is correct, and it should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under 1) 9 C. J. p. 934. (2) 9 C. J. p. 937 (1926 Anno). (3) 9 C. J. p. 957.