## WALKER et al. v. LOCAL BLDG. & LOAN ASS'N.

No. 23038.    Jan. 21, 1936.

Rehearing Denied March 3, 1936.

Cress & Tebbe, for plaintiffs in error.

Everest, McKenzie, Halley & Gibbens, for defendant in error.

PER CURIAM. The parties will be referred to herein as they appear in the trial court, the Local Building & Loan Association, a corporation, of Oklahoma City, Okla., as plaintiff, and C. L. Walker, also known as Clarence L. Walker, and Mamie D. Walker, also known as Mamie Dixie Walker, as defendants.

This is an appeal from the judgment of the district court of Noble county, Okla., wherein the court rendered judgment on certain promissory notes, secured by mortgages on real estate.

This action was commenced by the plaintiff on February 28, 1929, in the district court of Noble county, Okla., to recover judgment on 12 promissory notes and to foreclose 12 real estate mortgages securing said notes. Plaintiff's petition consisted of 12 separate causes of action, one on each note and real estate mortgage, and is in the usual and proper form of such suits. Plaintiff also sought to recover for taxes paid by it on the real estate covered by the mortgages, and attorney fees provided in the mortgages. Defendants admitted the execution of the notes sued upon, the mortgages, applications for purchase of stocks and assignment of rentals, and in their answer and cross-petition they allege that a usurious rate of interest has been charged, and seek to recover from the plaintiff double the interest alleged to have been charged. Defendants contend that in collecting rents certain misapplications of rents were made by the plaintiff; that the defendants applied

to plaintiff merely for a loan of money and did not desire to become stockholders in the plaintiff company, but were advised that it would be necessary that they buy certain shares of Class B installment stock in order to secure the loans; defendants contend they did not in fact become stockholders, but only borrowers of money, and that the only relationship between plaintiff and defendants was and is that of lender and borrower of money; that there was merely a purchase and sale of stock, and plaintiff had no right to apply any of the monthly payments made by the defendants on the purchase price of said stock so purchased, and that all payments made by the defendants should have been applied on interest and principal, and when so applied as a simple loan it amounts to usury.

Defendants further contend that the plaintiff had not complied with the law governing building and loan associations, and that its manner of operation was for the purpose of evading the laws against usury; that the plaintiff was not in fact a building and loan association or entitled to any of the privileges accorded by the law to building and loan associations, and that at the most the plaintiff is a corporation under the general laws pertaining to corporations; that the law limits the capital stock of a building and loan association to 5,000 shares of $100 each or 2,500 shares of $200 each, or a maximum capital stock of $500,000, and that the plaintiff has, in violation of the law, increased its capital stock from time to time until it has reached $89,000,000; that the stock issued by the plaintiff was of four kinds: Full paid stock, prepaid stock, installment stock, and Class B installment stock; that the first three named stocks were and are issued to nonborrowing members, and the last only to borrowing members, and that there is a lack of mutuality between the borrowing members and the nonborrowing members.

Defendants further contend that the issuance of Class B installment stock is only a part of a plan and scheme to charge more than the legal rate of interest, and that it was never intended by the plaintiff that the defendants should become bona fide shareholders; that the making of the notes and mortgages and issuance and assignment of stock was a single transaction wherein the relationship of lender and borrower existed, and not a building and loan transaction.

Defendants further contend that the issuance of said Class B installment stock was only a subterfuge and evasion to enable the charging of more than the maximum legal rate of interest; that the issuance of said stock was ineffectual to relieve the plaintiff of a duty to apply all monthly payments on interest and principal instead of on interest and stock, and that the court should construe it all as one transaction in each case constituting a loan at simple interest, and without any regard to the purchase of stock.

Defendants further contend that the plaintiff did not offer its money for bid, but by its by-laws pretended to and did dispense with the offering of its money for bid, and in lieu thereof provided in its by-laws for an annual rate of interest, and that these defendants were charged a rate of interest different from that provided in the by-laws. These foregoing statements constitute the issues between the parties.

The 12 promissory notes were each secured by a separate mortgage on separate parcels of real estate located in Perry, Noble county, Okla., and each of said instruments was dated December 20, 1927. Stock in the plaintiff building and loan association was issued to the defendants and by them pledged as security to the building and loan association to the amount of said notes. The contracts herein sued upon were the usual contracts executed between the building and loan associations and a borrowing member or stockholder. This cause was tried to the court without the intervention of a jury, and judgment was rendered for the plaintiff on the 16th day of February, 1931, finding all of the issues in favor of the plaintiff and against the defendants, and decreeing foreclosure of each of the 12 real estate mortgages.

There seems to be only one question of fact involved in this case. The evidence discloses that there were 12 separate assignments of rent to the plaintiff association by the defendants. Defendants contend that the rents collected on each piece of property should have been applied to the particular note and mortgage representing the particular property from which it was collected. The vice president and manager of the plaintiff association testified that the rents were applied pro rata on all 12 of the notes and mortgages, and that he talked with Mr. Walker and explained how the payments were being applied and had an understanding with him about the application of the rents, and that it was satisfactory with Mr. Walker. In the light of this testimony we hold that the evidence is suffi-

cient to show a proper application of the rents. The evidence clearly discloses that the defendants received credit for all rents collected from the properties involved.

The only thing left in the case is a matter of law. The parties stipulated that the plaintiff filed its articles of incorporation in the office of the Secretary of State on the 12th day of September, 1908, showing a capital stock of $200,000, consisting of 2,000 shares of installment stock of the par value of $100 each, and that a charter was issued to the plaintiff, showing and authorizing said capitalization; that pursuant to notice a special meeting of the stockholders of the plaintiff association, by a majority of its stockholders, authorized the increasing of the capital stock of the plaintiff association to $700,000, consisting of 7,000 shares of $100 par value each, and that amended articles of incorporation showing the increase of capitalization were duly filed in the office of the Secretary of State on December 28, 1909; that pursuant to notice another special meeting of the stockholders was held in 1912, and a resolution of a majority of the stockholders authorized the increasing of the capital stock of the plaintiff association to $1,200,000, consisting of 12,000 shares of $100 par value each, and that amended articles of incorporation showing the increase of capitalization were filed in the office of the Secretary of State on February 5, 1912; that at another special meeting of the stockholders held on September 16, 1914, pursuant to notice, a majority of the stockholders authorized an increase of the capital stock of the plaintiff association to $2,000,000 of 20,000 shares of $100 par value each, and that amended articles of incorporation, showing the increase of capitalization were filed in the office of the Secretary of State on September 18, 1914, and the stipulation shows that from time to time thereafter the plaintiff association increased its stock again in larger and larger amounts in 1915, 1916, 1919, 1920, 1921, 1922, 1923, 1924 and 1925. It was further agreed between the parties that the defendants were issued Class B installment stock, which certificates were immediately assigned to the plaintiff association as security for the various loans herein sued upon, and that a proxy was taken in the name of one of the officers or directors of the association to vote said stock.

The trial court made very extensive findings of fact and conclusions of law, and thereafter rendered its judgment, pursuant to said findings of fact and conclusions of law. The specifications of error assigned by the defendants consist of 40 in number, 39 of which are identical with the same grounds of the motion for new trial. Under these specifications of error defendants group them under two issues, to wit: (1) That the loans of money herein involved are usurious, under the laws of this state; and (2) that under any state of law the judgment as to each cause of action is excessive. As to the second issue and contention raised by the defendants, it is unnecessary to discuss same for the reason that the evidence is entirely sufficient to sustain the contention of plaintiff, and we hold that the judgment of the trial court as to the amount of recovery on each cause of action is correct.

Then it is only necessary to discuss the first issue raised by the defendants. Under this issue defendants contend that the highest authorized capital stock of any building and loan association incorporated under the laws of the state of Oklahoma is $500,000 par value, and that all stock issued in excess of that amount is unauthorized and void, and that the holders of stock in excess of that amount may set up its invalidity in a foreclosure action; that under the pleadings in the case there is no issue of estoppel pleaded by plaintiff, and defendants may plead invalidity of all stock issued over the amount of $500,000; that the plaintiff association in issuing full-paid and prepaid stock upon which the payment of more than $2 at any one time is made, acts in violation of the laws of the state; that the issuance of stock in excess of $500,000 makes the plaintiff and defendants a simple borrower and plaintiff is not entitled to the protection of the building and loan laws of the state; that there is no mutuality between the stockholders and plaintiff and defendants are simply lender and borrower and the transaction is governed by the general laws of the state; that under the general laws of the state the plaintiff is guilty of usury and subject to the penalty provided by law.

We cannot agree with any of the contentions of defendants. Building and loan associations in Oklahoma date back to the Territorial Legislature of 1890. The first act is found in section 1221 of the Statutes of 1890, and is carried forward as section 1144 in the Statutes of 1893 and appears as section 1194, Wilson's Rev. & Ann. Statutes of 1903; as section 1293, Rev. Laws 1910; as section 5377, C. O. S. 1921, and as section 9800. O. S. 1931, and reads as follows:

"The capital stock of any corporation created by virtue of this article shall at no time consist of more than 2,500 shares, of

$200 each, or 5,000 shares of $100 each, and installments on which stock are to be paid at such time and place as the by-laws shall appoint, no periodical payment to be made exceeding $2 on each share. Every share of stock shall be subject to a lien for the payment of unpaid installments and other charges incurred thereon, under the provisions of the charter and by-laws, and the by-laws may prescribe the form and manner of enforcing such lien. New shares of stock may be issued in lieu of the shares withdrawn or forfeited. The stock may be issued in one or more successive series, in such amount as the board of directors or stockholders may determine, and any stockholder wishing to withdraw from the said corporation shall have power to do so by giving 30 days' notice of his intention to withdraw, when he shall be entitled to receive the amount paid in by him, and such proportion of the profits as the by-laws may determine, less all fines and other charges: Provided, that at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors, and that no stockholder shall be entitled to withdraw whose stock is held in pledge for security. Upon the death of a stockholder, his legal representative shall be entitled to receive the full amount paid in by him and legal interest thereon, first deducting all charges that may be due on the stock. No fines shall be charged to a deceased member's account from or after his decease, unless the legal representatives of such decedent assume the future payments of the stock."

The Oklahoma Legislature enacted chapter 10, art. 4, of the Session Laws of 1909, which appears at page 154 of said Session Laws. Said act was approved and became a law February 18, 1909. Section 1 of said act appears as section 9801, O. S. 1931, and reads as follows:

"Domestic mutual building and loan associations, organized under the laws of the state of Oklahoma, are hereby authorized and empowered to increase their authorized capital stock to such amount as may be determined advantageous by such association, in the manner as herein prescribed."

Section 2 of said act appears as section 9802, O. S. 1931. By referring to the Session Laws of 1909, the title to the act provides:

"An act authorizing domestic mutual building and loan associations organized under the laws of the state of Oklahoma to increase their capital stock and prescribing the procedure therefor and declaring an emergency."

This act expressly authorized the increasing of capital stock of building and loan associations. Section 3 of the act provides:

"All acts and parts of acts in conflict herewith are hereby repealed."

The act carried the emergency clause. There is no conflict between the act of 1909 and the act of 1890. The act of 1909 (sec. 9801, O. S. 1931) is supplemental to the act of 1890 (sec. 9800, O. S. 1931), and we so hold. It was evidently the intent of the Legislature to give existing building and loan associations an opportunity to expand by increasing their capital stock. It is clear that both acts are constitutional, and that section 9801, O. S. 1931, is supplemental to section 9800, O. S. 1931. These two acts dispose of all of defendants' contentions as to the law.

Section 8158, Rev. Laws 1910, provides a method for meeting a situation where there are two statutes on the same subject-matter. This same section is carried forward as section 3586, C. O. S. 1921, and section 4270, O. S. 1931, and reads as follows:

"If the provisions of any code, title, chapter or article conflict with or contravene the provisions of any former code, title, chapter or article, the provisions of the latter code, title, chapter or article must prevail as to all matters and questions arising thereunder out of the same subject-matter."

This section was construed by the Supreme Court of the state of Oklahoma in the case of Armstrong v. Phillips et al., 76 Okla. 192, 181 P. 715, 184 P. 109. The court after quoting the foregoing provision said:

"It seems to us that the clear import of this provision is that if any former code conflicts with the present code the present code shall govern, and that if any chapter, title or article of the present code conflicts with the provisions of any former, title, chapter, or article in the same code, the provisions of the latter title, chapter, or article must prevail. We think, under the above rule of construction, the word 'latter,' as applied to two conflicting provisions in the same code, must be held to have reference to place or arrangement. From this it follows that section 4021 is the applicable provision."

The law of 1909 has a latter place or arrangement in the Revised Laws of 1910, and also in C. O. S. 1921, and also in O. S. 1931. The Oklahoma Legislature of 1913 passed an act regulating building and loan associations, which is shown as chapter 200, p. 445, Session Laws of 1913. The title of the act is:

"An Act relating to building and loan associations and others issuing contracts on the partial payment plan providing for the supervision and regulation thereof," etc.

This act is found in the 1931 Statutes from section 9856 to section 9869, inclusive. Defendants contend that the act of 1913 is un-

constitutional as being in contravention of section 57, article 5, of the Constitution of Oklahoma, which provides that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

By a careful reading of the title to this act, it will be observed that it states clearly that it is an act relating to building and loan associations and providing for the supervision and regulation thereof, and it also specifies certain statutes which are expressly repealed. This title certainly embraces but one subject, and that subject is, "Contracts issued by building and loan associations and others on the partial payment plan," and by a careful reading of the act itself we think it is entirely within the constitutional provision. State ex rel. Ledbetter, Sheriff, v. Pitts, Co. Treas., 137 Okla. 59, 277 P. 918. The Supreme Court held (quoting from pg. 61):

"It is a rule of universal application, that a statute will not be held unconstitutional on the ground that the object or subject is not expressed in the title unless the title is clearly insufficient. Any other view would seriously hamper legislation, and would be productive of much evil. But when the title is clearly insufficient and misleading, the transient inconvenience of striking the legislation down is incomparable with the evil which might follow the failure to observe the due notice provision of the Constitution, setting forth in this connection the limitations of the Legislature in amending, repealing or enacting laws."

This statute has already been passed upon by our court in the case of McGuire v. Oklahoma City Bldg. & Loan Ass'n, 112 Okla. 158, 241 P. 800, wherein the court said (quoting from pg. 161):

"The Legislature of this state (chapter 200, section 3, Session Laws of 1913, section 5420, Comp. Stat. 1921) changed the then existing statute and authorized building and loan associations, doing business in the state of Oklahoma, to issue stock in full paid, prepaid, or installment shares in such amounts and at such times and in such manner as the by-laws may provide, which statute reads as follows:

"'Any building and loan association doing business in the state of Oklahoma may issue its stock in full paid, prepaid, or installment shares, in such amounts and at such times and in such manner as the by-laws may provide, and each building and loan association, or other persons, partnerships, or corporations coming under the provisions of this act shall file with the Bank Commissioner, a certified copy of its charter, constitution and by-laws, and its plan of conducting business, together with a statement, verified by oath of its president and secretary, showing the amount of authorized capital stock, assets and liabilities, the kind and character of the same, together with any other information which may be required, which statement, verified by oath, shall be filed semi-annually thereafter. Any such building and loan association may charge a fee of not to exceed $5 for examining each piece of real estate mortgaged to any such association to secure a loan.'"

Further quoting from pg. 161:

"The section following requires the Bank Commissioner to approve the constitution, by-laws, plans and methods of conducting business of such association before it shall be authorized to do business in this state. And the next section requires that the Bank Commissioner shall issue a certificate of authorization to such an association before it can transact business in the state."

As to the question of usury involved in building and loan contracts, the court in the same decision said (quoting from pg. 162):

"Upon the authority of the decision of this court, in the case of Aetna Building & Loan Association v. Hahn, 82 Okla. 110, 198 P. 331, we conclude that the amounts charged for interest and on stock are two separate and distinct contracts, and where the interest charged is not beyond the legal rate, it will not be treated as a usurious loan, and the more recent case of Collings et al. v. Industrial Savings Society, 94 Okla. 271, 221 P. 1036, is to the same effect."

The evidence clearly discloses that the interest rate charged by the plaintiff association since July 1, 1926, to the date of the trial was 7.8 per cent., and that it was the intention of plaintiff and defendants that the defendants become shareholders under the plan provided in the by-laws and the application for stock and loan; that no actual fraud or deceit has been shown by any evidence in this case; that the plaintiff held certificates authorizing it to do business as a building and loan association, under and pursuant to the laws of the state of Oklahoma; that at the time this suit was brought by the plaintiff, defendants were in default and had breached

the terms of each of the 12 notes and 12 mortgages set up in the 12 causes of action in plaintiff's petition. We hold that under the law and the by-laws of the plaintiff association, it had a right to issue the Class B installment stock herein involved and to take an assignment thereof as security for the loan in connection with the real estate loans; that the defendants have entered into contracts with the plaintiff to purchase stock and have become borrowers from the building and loan association, and the two transactions have no connection and cannot be commingled to support an action in usury.

We further hold that the plaintiff had the right to fix annual rates of interest, in its by-laws, pursuant to statute.

We hold that the plan provided by the by-laws for the issuance of the different kinds of stock, as hereinbefore stated, is authorized by the laws in force at the time of the transactions, and the payments required of the defendants and promised to be made by the defendants do not constitute usury.

We hold that under the evidence in this case the plaintiff is entitled to judgment against the defendants for the recovery of the amounts of money on its 12 causes of action, and for recovery of attorney fees, and for a decree of foreclosure of its several mortgages on the real estate, as found by the trial court.

We are therefore of the opinion that the judgment of the lower court is correct, and it should be, and is hereby, affirmed.

The Supreme Court acknowledges the aid of Attorneys J. F. Hatcher, T. H. Williams, and A. C. McElroy in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hatcher and approved by Mr. Williams and Mr. McElroy, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.