## DUNAWAY et al. v. LOCAL BLDG. & LOAN ASS'N et al.

No. 27549.    March 1, 1938.

Rehearing Denied March 22, 1938.

Blakeney, Wallace, Brown & Blakeney and W. C. Wood, for plaintiffs in error.

Everest, McKenzie & Gibbens, for defendants in error.

HURST, J. This is an action to quiet title to certain property upon which the defendant claims an interest by virtue of a mortgage thereon, the foreclosure of which defendant seeks in its cross-petition. The controversy arises from the following facts: On January 14, 1927, W. M. and Alva K. Diddle owned the property in question. They subscribed for 30 shares of stock of defendant association and executed a "Nonnegotiable Mortgage Note" to it in the sum of $3,000 on the above date. At the same time, a mortgage, the terms of which will be set out in greater detail hereafter, covering the property and the 30 shares of stock was executed by the Diddles as security for the debt. The note and mortgage called for monthly payments of $37.50, of which $19.50 was to be paid as interest on the loan, and $18 monthly dues upon the stock, which stock, when fully paid, discharged the obligation.

Thereafter the property was conveyed and the loan transferred to the defendant Sherritt, who, in turn, transferred the property to the plaintiffs by the warranty deed containing the following recital:

"To have and to hold said described premises * * * free, clear and discharged of and from all former * * * mortgages and other liens and encumbrances of whatsoever nature, except a first mortgage of ($3,000) three thousand dollars to the Local Building and Loan Company of Oklahoma City, Oklahoma. * * *"

The mortgage referred to above contained the following clause:

"First: Said mortgagors being the owner of thirty shares of stock of the said the Local Building and Loan Association, and having borrowed of said Association, in pursuance of its by-laws, the money secured by this mortgage, will do all things which the by-laws of said Association require shareholders and borrowers to do, and will pay to said Association on said stock and loan the sum of Thirty-seven Dollars and Fifty cents ($37.50) per month, on or before the 30th day of each and every month until said stock shall mature as provided in said by-laws. * * *"

After the foregoing transaction, plaintiffs filed a form "Application for Transfer of Loan" with the defendant association, which contained, among other things not pertinent here, the following:

"I (or we) hereby make application to your association to have your mortgage loan No. 22643, for $3,000.00 * * * transferred on your books to the name of Mary M. Dunaway. * * *

"I (or we) have purchased the real estate described in the mortgage securing said loan, and will and do hereby assume and agree to pay said loan and to comply with all the terms and conditions thereof, provided you consent to this transfer."

Defendant formally consented to and did transfer plaintiffs' names on the books of the company. At the time of the transfer to plaintiffs, the following by-law of defendant association was in effect: "A transfer of the real property and loan shall automatically transfer the collateral stock to the new owner of said realty."

Plaintiffs paid $37.50 monthly to defendant association until the sum of $3,000 had been paid, and declined to make further payments. They instituted this action to quiet title to the premises claiming the note and mortgage had been paid. The defendant cross-petitioned for foreclosure of the mortgage, seeking no personal judgment against plaintiffs. The trial court, after the evidence was in, sustained defendant's motion for a directed verdict for the balance due on the note and mortgage and decreed foreclosure of the mortgage. Default judgment was entered against the defendant Sherritt. Plaintiffs appeal, making ten assignments of error, which have been briefed under three propositions.

The first proposition is that the trial court erred in holding that the plaintiffs assumed the obligation of the stock purchase contract entered into between the Diddles and the defendant association.

Plaintiffs' theory in this regard is that the purchase of stock and the borrowing of money from a building and loan association have been declared to be two transactions having no connection with each other so as to support an action for usury (McGuire v. Oklahoma City Building & Loan Association [1925] 112 Okla. 158, 241 P. 800; Walker v. Local Building & Loan Association .[1936] 176 Okla. 168, 54 P.2d 1078). Plaintiffs further contend that when they purchased the property they assumed only the payment of the loan, and not the purchase of the stock, and therefore, the payments made by them which were credited on the purchase of the stock by the defendant association should be credited, with interest, on the loan. Plaintiffs also contend that, since they bought only Sherritt's equity of redemption, they did not assume payment of the mortgage indebtedness by the warranty deed to them from Sherritt, and consequently could not have assumed the purchase of the stock, which was part of the obligation contained in the mortgage and which had no reference to the sale of the land. Plaintiffs further state that the by-law, set out hereinbefore, has no application to them, for the reason that they had not agreed to abide by the laws of the association.

We need not determine whether plaintiffs are correct in asserting that they did not assume the purchase of the stock by the deed to them from Sherritt, or whether thereby the by-law of the association quoted above was made applicable to them. The assumption of the obligation to purchase the stock was consummated in the "Application for .Transfer of Loan" which plaintiffs made to defendant association. By that instrument, they expressly assumed and agreed "to pay said loan and to comply with all the terms and conditions thereof." The loan consisted of the $3,000, with interest, advanced by defendant association to the Diddles, and the "terms and conditions thereof" were embodied in the nonnegotiable mortgage note and the mortgage securing same, both of which instruments expressly provided for the payment of $37.50 monthly, part of which was to be applied as monthly dues on the stock and part as interest due on the sum borrowed, and of which note and mortgage plaintiffs had notice. Plaintiffs agreed to comply with these terms and conditions. Gunby v. Armstrong, 133 F. 417. To hold otherwise, and to hold as contended by plaintiffs, would nullify plaintiffs' agreement to comply with all the terms and conditions of the loan.

This conclusion is substantiated by plaintiffs' conduct with reference to the transaction. The record discloses that after the property was conveyed to them, they acquired possession of the passbook issued by the defendant association; placed their name on its cover, and lined out Diddle's name thereon; that when they made their monthly payments, same were entered in the book by the defendant association under the heading of "Dues" and "Interest" in the sums agreed upon; that on the face of the passbook itself the following appeared: "Installment Stock, Class B, Monthly Payment, Dues—$18.00, Interest $19.50, Total—$37.50"; that dividends on the stock were entered in the appropriate column in the passbook; and that plaintiffs had possession of the book up to the time of the trial, except when it was returned for audit. No evidence appears in the record wherein plaintiffs objected to the crediting of $18 per month to the stock or that they refused to accept the dividend credited to them on the stock.

Under these circumstances, plaintiffs are in no position to claim that they did not know of or. assume the purchase of the stock as agreed in the original contract between the Diddles and defendant association, or that the payments made by them to defendant were improperly credited on the stock, instead of the principal of the loan. Universal Trust Co. v. Boehanski, 135 N. Y. S. 100. It is in this respect that this case differs from Sawtelle v. North American Savings, Loan & Bldg. Co., 14 Utah, 443, 48 P. 211, relied on by plaintiffs. In that case the court pointed out that the plaintiff therein knew nothing of the contract between its assignor and the defendant, and to charge him with it would be inequitable. But such a conclusion here would do violence to the circumstances appearing in this record, as set out above.

■ Plaintiffs' second proposition is that the trial court erred in not holding that the stock issued to the Diddles was void as being a part of an issue of stock prohibited by section 9800, O. S. 1931, which, so far as applicable here, provides that the capital stock of any building and loan association "shall at no time consist of more than two thousand five hundred shares of two hundred dollars each, or five thousand shares of one hundred dollars each." The capital stock of defendant association exceeded this amount.

Defendant relies on section 9801, O. S. 1931, which authorizes domestic mutual building and loan associations to "increase their authorized capital stock to such

amount as may be determined advantageous by such association." This section was enacted after section 9800, supra.

Plaintiffs recognize the holding of this court in Walker v. Local Building & Loan Ass'n (1936) 176 Okla. 168, 54 P.2d 1078, to be contrary to their position here, but insist that the question raised here was not an issue therein and that the decision in the Walker Case was a per curiam opinion and not written by a member of the court. We cannot agree that the court therein did not pass on the question of the construction of sections 9800 and 9801, O. S. 1931, as regards the issue of capital stock, since the 3rd syllabus by the court reads:

"Section 9801, O. S. 1931 is supplemental to section 9800, O. S. 1931, and gives authority to building and loan associations to increase their authorized capital stock to such an amount as may be determined advantageous by such associations."

While it is true that the opinion was written by three attorneys to whom it had been referred, yet it was duly considered and adopted by, and became the opinion of, this court, and we adhere to same.

■ Plaintiffs' third proposition arises by virtue of the following facts: The stockholders of defendant association passed the following resolution on January 24, 1924:

"Resolved: That the capital stock of the Local Building and Loan Association be and the same is hereby increased from the sum of $50,000,000 to $75,000,000 and the officers and directors be and they are hereby authorized to file with the Secretary of State the necessary papers in order that the certificate of increase be issued at times and in amounts to best meet the needs of the Association."

Pursuant to the resolution, the officers and directors obtained certificates of change in capital stock from the Secretary of State at different times and in different amounts as follows: On February 21, 1924, the capital stock was increased from $50,000,000 to $53,000,000: on September 5, 1924, the capital stock was increased from $53,000,-000 to $56,000,000; on October 1, 1924, the increase was from $56,000,00 to $58,000,000; and on October 19, 1924, the increase was from $58,000,000 to $59,000,000.

The stock purchased by the Diddles, which, as we have held, was later assumed by plaintiffs, was issued on January 14, 1927. It is plaintiffs' contention that the increases of stock above listed were invalid, first, because section 9802, O. S. 1931, required the corporation to obtain an increase in its capital stock to the full amount

authorized by the stockholders, that is, $25,000,000 and to pay the Secretary of State $1 for each share of such increase, and there was no authority to increase the capital stock at different times and in different amounts, as was done here; and, second, if the officers were authorized to determine the amount of the increase under the resolution, that authority was exhausted on obtaining the first increase of $3,000,000, and a new authorization from the stockholders was necessary in order to obtain the subsequent increases.

Section 9802, supra, reads as follows:

"Any such association desiring to increase its authorized capital stock may do so at any regular meeting of the stockholders, or at any special meeting of the stockholders, called for that purpose. Upon the presentation to the Secretary of State of a certified copy of the minutes of any such meeting, certified to by the officers and board of directors of such association, showing and disclosing that a majority of the stockholders desire an increase of capital stock to the amount to which such increase shall be made, and upon the payment to the Secretary of State of the regular fees prescribed by law, it shall be the duty of the Secretary of State to issue to any such association, an amended charter and articles of incorporation, which shall authorize such association to increase its capital stock in the desired amount."

We cannot agree with plaintiffs' contention that this statute was not followed by defendant association in increasing its capital stock. The resolution of the stockholders of January 24, 1924, when considered in its entirety, authorized the officers and directors to take the necessary steps to obtain increases of capital stock at times and in amounts to meet the needs of the association, not to exceed a total increase of $25,000,000. When the directors and officers made their decision of the time and amount of the desired stock increase, and filed a certified copy of the minutes of the meeting showing the stockholders' resolution, and disclosing that a majority of the stockholders desired such increase, the requirement of the statute was met. Nor do we agree with plaintiffs that this power, once exercised, became thereby exhausted, requiring a new authorization from the stockholders. The resolution of January 24, 1924, was a continuing authority to the officers and directors to take the necessary steps to increase the capital stock of the association at such times and in such amounts as in their judgment best met its needs, until the stock had been increased to $75,000,000 or the authority withdrawn. The

statute does not preclude the stockholders from taking such action.

We have carefully considered the cases of Marion Trust Co. v. Bennett, 169 Ind. 346, 82 N. E. 782; State v. Northern Pac. Ry. Co., 157 Wis. 73, 147 N. W. 219, and State v. St. L. & S. F. Ry. Co., 81 Kan. 404, 105 P. 685, cited by plaintiffs, and find nothing therein contrary to the conclusions we have reached.

This holding renders it unnecessary to determine defendant's contention that plaintiffs cannot question the validity of the increase of the capital stock, and that the state only can question it.

Judgment affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and CORN, JJ., concur.